## 75698. HILL v. FORDHAM.
(367 SE2d 128)

Pope, Judge.

This case involves a claim for medical (dental) malpractice. In February of 1981 plaintiff Robert H. Fordham visited the office of defendant Robert Hill, D.D.S., for emergency treatment of a toothache. Plaintiff authorized Dr. Hill to extract the remaining five teeth in his lower jaw so he could be fitted with lower dentures. The dentist's notes for the initial visit indicate that a fully impacted third molar (wisdom tooth) was revealed by x-ray which, according to Dr. Hill's notes, "may erupt later." Plaintiff denies he was informed of the presence of this impacted molar and claims he was told all his remaining teeth had been extracted. Plaintiff was fitted with dentures but experienced problems in wearing them. On three or four occasions plaintiff visited Dr. Hill for treatment or adjustments of the dentures. Plaintiff claims Dr. Hill told him his discomfort was caused by bone slivers which naturally result from the extraction of teeth and which could be expected to work their way out of the gum over time. Plaintiff was last treated by Dr. Hill on May 29, 1981. Although plaintiff continued to suffer periodic tenderness and swelling of the gums from wearing his dentures, he sought no further professional treatment for over four and one-half years. On November 12, 1985 plaintiff visited another dentist who diagnosed an erupted and abscessed wisdom tooth. Extraction of the tooth largely relieved plaintiff's discomfort.

Plaintiff filed this action against defendant on October 24, 1986, five years and four months after he was last treated by defendant. Plaintiff claimed the statute of limitation was tolled by defendant's fraudulent failure to inform him of the existence of his remaining wisdom tooth and by defendant's assurances that his condition would resolve itself over time. Defendant moved for summary judgment on the ground that the statute was not tolled and, even if a jury issue was raised in regard to the tolling of the statute of limitation, the complaint would nevertheless be barred by the five-year statute of ultimate repose for medical malpractice actions as enacted by Ga. L. 1985, p. 556, § 1 (OCGA § 9-3-71 (b)). Defendant appeals from the denial of his motion for summary judgment.

1. The threshold issue is whether the two-year statute of limitation for medical malpractice claims was tolled as a matter of law under the facts of this case. We find that an issue of fact remains as to whether Dr. Hill's alleged failure to inform the plaintiff of the existence of his impacted tooth and the alleged statement concerning plaintiff's condition were sufficient to toll the statute of limitation.

If this were a case in which plaintiff simply failed to seek medical treatment for his continuing symptoms in reliance on the defendant's misdiagnosis of his condition as being related to "bone slivers," the

statute of limitation might not be tolled. See *Hendrix v. Schrecengost*, 183 Ga. App. 201 (358 SE2d 486) (1987); *Shved v. Daly*, 174 Ga. App. 209 (329 SE2d 536) (1985). However, in this case there is evidence the defendant knew of the existence of the wisdom tooth, the condition which allegedly caused plaintiff's pain and discomfort. Plaintiff claims defendant failed to inform him of the existence of this tooth. Plaintiff further claims he failed to seek further treatment or diagnosis of his condition in reliance on defendant's statement that his condition was to be expected and would eventually resolve itself. "[A] patient has the right to believe what he is told by his medical doctors about his condition. . . . [The statute of limitation] would not begin to run if the defendant physician had assured him that the injuries which had manifested themselves were only slight or only temporary and assured him that he would eventually be all right, thereby inducing plaintiff to refrain from making any further inquiry into his condition." *Stephen W. Brown Radiology Assoc. v. Gowers*, 157 Ga. App. 770, 773-774 (278 SE2d 653) (1981). The same rule applies to dentists and other health care professionals covered by the medical malpractice statute of limitation. Whether defendant knowingly failed to inform plaintiff of his condition and whether plaintiff justifiably relied on defendant's diagnosis, or failed to exercise ordinary care by neglecting to seek treatment over a four and one-half year period, are proper questions for jury determination and may not be resolved on motion for summary judgment. See *Lorentzson v. Rowell*, 171 Ga. App. 821 (321 SE2d 341) (1984), rev'd in part on other grounds, 254 Ga. 111 (327 SE2d 221) (1985); *Leagan v. Levine*, 158 Ga. App. 293 (1) (279 SE2d 741) (1981).

2. Having determined that the statute of limitation was not, as a matter of law, tolled in this case, we next consider whether plaintiff's action was barred by operation of the statute of ultimate repose for medical malpractice claims, OCGA § 9-3-71 (b). On the date plaintiff was last treated by defendant, May 29, 1981, the running of the applicable two-year statute of limitation was calculated from the date the alleged negligent act or omission occurred. Ga. L. 1976, p. 1363, § 1 (OCGA § 9-3-71 (amended 1985)). Subsequent to the last date of treatment, Georgia's statute of limitation for medical malpractice actions was amended to add a five-year statute of ultimate repose and abrogation. Ga. L. 1985, p. 556, § 1, OCGA § 9-3-71 (b). That statute became effective July 1, 1985. Plaintiff argues the statute should not be applied retrospectively in a case such as this where the cause of action arose before the effective date of the statute.

"A statute of limitation is remedial in nature. The legislature can constitutionally provide for the retrospective application of a remedial statute provided a time be fixed subsequent to the passage of the statute which allows citizens affected by it a reasonable time to pro-

tect their rights." *Jaro, Inc. v. Shields*, 123 Ga. App. 391, 392 (181 SE2d 110) (1971). See OCGA § 1-3-5. In the non-codified Section 3 of the 1985 Act amending the statute of limitation, the legislature provided a grace period for existing actions which would otherwise be cut off by the statute in order to save it from the prohibition against retrospective application. "No action for medical malpractice which, prior to July 1, 1985, has been barred by the provisions of Title 9, relating to actions, shall be revived by this Act. No action for medical malpractice which would be barred before July 1, 1986, by the provisions of this Act but which would not be so barred by the provisions of Title 9 in force immediately prior to July 1, 1985, shall be barred until July 1, 1986." Ga. L. 1985, pp. 556, 557, § 3.

In *Allrid v. Emory Univ.*, 249 Ga. 35 (1) (285 SE2d 521) (1982), the Georgia Supreme Court found that a virtually identical one-year grace period included in the 1976 Act, originally setting forth a separate statute of limitation for medical malpractice actions, provided a reasonable time for affected parties to protect their rights, thereby permitting the act to have retrospective application. In *Quinn v. Stafford*, 257 Ga. 608 (5) (362 SE2d 49) (1987), the Supreme Court interpreted the grace period savings clause of the 1985 Act now before us and found it to be "nonsensical in its application" because that section of the act codified at OCGA § 9-3-71 (a) could not possibly cut short a claim which would otherwise be viable under the previous statute. As the court pointed out, "any medical-malpractice action barred before July 1, 1986, by the 1985 statute of [limitation], requiring medical-malpractice actions to be brought within two years of the injury or death, would necessarily be barred by the 1976 statute, requiring medical-malpractice actions to be brought within two years after the date on which the negligent or wrongful act or omission occurred." Id. at 611. However, in *Quinn*, the effect of the statute of ultimate repose, codified at OCGA § 9-3-71 (b), was not at issue as it is in the case now before us. The case sub judice presents just the situation described by the grace period clause of the 1985 Act. Here, plaintiff's claim would be barred before July 1, 1986 by the 1985 Act but would not be barred by the applicable law in force immediately prior to the effective date of the new act. Therefore, the grace period is meaningful and not "nonsensical in its application" to the facts of this case. The statute of repose may be applied retrospectively because the affected parties are granted a one-year grace period to perfect their rights after enactment of the new statute. *Quinn v. Stafford*, supra at (8); *Allrid v. Emory Univ.*, supra at (1b).

If the five-year statute of ultimate repose were applied to the facts of this case, the plaintiff would be precluded from bringing his action. Even if a jury were to find the two-year statute of limitation was tolled until the plaintiff discovered the existence of the tooth

upon his visit to the second dentist on November 12, 1985, the statute of ultimate repose would still bar his action because "in no event may an action for medical malpractice be brought more than five years *after the date on which the negligent or wrongful act or omission occurred.*" (Emphasis supplied.) OCGA § 9-3-71 (b). Since plaintiff was last treated by defendant on May 29, 1981, the provisions of the 1985 Act would extinguish his action on May 29, 1986. By operation of the uncodified grace period plaintiff was nevertheless allowed until July 1, 1986 to bring his action. This was almost eight months after plaintiff was made aware of his claim by the information provided him by the second dentist on November 12, 1985. Plaintiff did not file his action within the reasonable time provided under the 1985 Act to protect his rights. Therefore, plaintiff's claim would be barred by operation of the statute of ultimate repose.

However, as noted above, the facts of this case raise an issue for jury determination as to whether plaintiff was deterred from bringing his action by defendant's alleged fraudulent concealment of the remaining tooth. Fraud by which the plaintiff is debarred or deterred from bringing an action tolls any applicable period of limitation. OCGA § 9-3-96. There is a distinction between a statute of limitation and a statute of ultimate repose. A statute of limitation is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued. A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable. Accord *Lamb v. Volkswagenwerk Aktiengesellschaft*, 631 FSupp. 1144 (S.D. Fla. 1986). The Georgia statute of limitation for medical malpractice permits an action to be filed within two years after the resulting injury or death. OCGA § 9-3-71 (a). However, the statute of ultimate repose nevertheless precludes an action from being brought more than five years from the date of the alleged negligent act or omission. OCGA § 9-3-71 (b). Therefore, an injury or death is not actionable if it occurs more than five years from the date of treatment. Statutes of ultimate repose have also been enacted to limit the right to recover for injuries from defective products (OCGA § 51-1-11 (b) (2)) and injuries from defective building design or construction (OCGA § 9-3-51). These limitations on liability for injuries occurring after a certain period are based upon reasonable expectations about the useful life of a building or a manufactured product. See *Pullum v. Cincinnati, Inc.*, 476 S2d 657 (Fla. 1985). Similarly, due to the uncertainty of aging, health and intervening events it is reasonable to limit liability for injury or death occurring more than five years from the date of medical treatment. A statute of ultimate repose sets an ultimate limit on which injuries shall be actionable. Therefore, by definition, a statute of ultimate repose cannot be "tolled" to permit actions to be brought for injuries

which did not occur until after the statutory period had expired. However, the statute of ultimate repose should not be applied to relieve a defendant of liability for injuries which occurred during the period of liability, but which were concealed from the patient by the defendant's own fraud. The statute of ultimate repose should not provide an incentive for a doctor or other medical professional to conceal his or her negligence with the assurance that after five years such fraudulent conduct will insulate him or her from liability. The sun never sets on fraud.

Other jurisdictions have held that the doctrine of equitable estoppel precludes a defendant from raising the defense of the statute of ultimate repose where there is evidence of fraud or other conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit. See *Canton Lutheran Church v. Sovik, Mathre, Sathrum & Quanbeck*, 507 FSupp. 873 (D.S.D. 1981); *Bomba v. W. L. Belvidere, Inc.*, 579 F2d 1067 (7th Cir. 1978). Likewise, we hold in this case that an issue of fraud remains for jury determination which, if found, would estop the defendant from raising the defense of the statute of ultimate repose. Summary judgment was properly denied.

*Judgment affirmed. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED MARCH 14, 1988.

*Edmund A. Landau III*, for appellant.
*Craig A. Webster*, for appellee.