77490, 77491. COLLINS v. NEWMAN MACHINE COMPANY, INC.; and vice versa.
(380 SE2d 314)

SOGNIER, Judge.

Donnie Witt Collins brought suit individually and as administrator of the estate of his son, David W. Collins, against Newman Machine Company, Inc. (Newman) and others, alleging claims for negligence and strict liability in the death of his son. Collins appeals from the grant of partial summary judgment to Newman in Case No. 77490, and Newman cross-appeals in Case No. 77491 from the denial of its motion for summary judgment on three remaining issues.

Construed favorably to Collins as respondent below, the record reveals that Collins' decedent was employed by Zarn, Inc., as a machine mechanic in its Atlanta plant, and as part of his regular duties performed maintenance work on Zarn's blow molders, machines used

in the manufacture of plastic flower pots. The record reveals that Zarn's in house engineer designed modifications to its blow molders, and that Zarn ultimately purchased the component parts needed for the design modifications from several different manufacturers, including die heads manufactured by both Newman and Paysour Company. Paul Pritzker, Collins' electrical engineering expert, testified by deposition that the heater bands, which were attached to the die heads on each blow molder, had exposed uninsulated high voltage terminal posts, and that the die head adjustment knobs were "within inches" of these exposed terminals. Pritzker opined that the die heads were an integral part of the "locus of the heater bands," the area he considered to be "unreasonably dangerous." Pritzker also stated that, while in his opinion the die heads had no inherent defect and that the defect was in the manner in which they were incorporated into the machine, the use to which the die heads were put by Zarn was a "foreseeable utilization . . . in an industrial setting."

Kathryn Proctor, a Zarn quality control employee, testified that on May 17, 1984 she asked Collins' decedent, David Collins, to adjust the flow of plastic from blow molder G-7, a maneuver which Mark Setliff, a Zarn mechanic, testified was accomplished by adjusting four flow restriction bolts located on the machine's die head. Proctor testified that David Collins became frustrated at the task and kicked the blow molder, and that after she returned to her second floor office she saw him strike an electrical box on or near blow molder G-7 with a wrench and then fall to the floor. Conversely, Setliff's testimony suggests that David Collins was working on the die head when he was shocked. Setliff stated in his affidavit that, although he did not see Collins' decedent receive the fatal shock, he did see David Collins "coming from in between the G-7 and G-8 machines . . . from the area where you go to make the adjustments to the dieheads," and that David called out to him and then fell. It is undisputed that David Collins died from the electrical shock he received.

1. In the main appeal Collins challenges the trial court's award of partial summary judgment to Newman, which was based upon the court's conclusion that the evidence showed that the only defect in the die head was a defect in design, and as Newman did not design the die head it could not be held liable for defective design. While acknowledging that Newman did not design the die heads but manufactured them to Zarn's specifications, Collins contends that questions of fact remain regarding whether Zarn's design was so unsafe that Newman did foresee or should have foreseen the danger, and whether Newman had special expertise in evaluating designs so as to require a higher standard of care. Newman argues that this issue is governed by the "contract specification defense," which has been adopted in other jurisdictions but has not been recognized in Georgia,

and which provides that "a contractor is not liable for damages resulting from specifications provided by his employer unless those specifications are so defective and dangerous that a reasonably competent contractor 'would realize that there was a grave chance that his product would be dangerously unsafe.' [Cits.]" *Johnston v. United States*, 568 FSupp. 351, 354 (3) (D. Kan. 1983).

Even assuming, arguendo, the applicability of the contract specifications defense in the case sub judice, but see generally *Moody v. Martin Motor Co.*, 76 Ga. App. 456, 461-462 (46 SE2d 197) (1948), we agree with Collins that because of Pritzker's testimony material questions of fact remain as to whether the specifications were so defective that Newman should have realized that its die heads might be dangerously unsafe when incorporated into the blow molder, thereby precluding application of this defense to sustain summary judgment in favor of Newman on Collins' negligence claim. See *Johnston*, supra at 355-356 (5).

As to Collins' claim in strict liability, "the question is whether the [die head] was defective in its manufacture, its packaging, or the failure to adequately warn of its dangerous propensities," *Center Chem. Co. v. Parzini*, 234 Ga. 868, 871 (218 SE2d 580) (1975), and whether any such defect existed at the time the die head was sold to Zarn. *Talley v. City Tank Corp.*, 158 Ga. App. 130, 136 (279 SE2d 264) (1981). Strict liability issues regarding manufacturing defects being addressed in Division 2, infra, we turn first to Collins' claim in strict liability based on failure to warn.

" 'A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling . . . the seller is not liable. Where, however, he has reason to anticipate that danger may result from a particular use . . . he may be required to give adequate warning of the danger . . . and a product sold without such warning is in a defective condition.' [Cit.]" *Parzini*, supra at 869-870 (3). This duty to warn arises only when the product is used in the manner reasonably contemplated and intended by the manufacturer, or in a manner reasonably foreseeable by the manufacturer. *Talley*, supra at 137. Newman argues the trial court's grant of summary judgment was correct because Newman did not design the die heads and there is no evidence the die heads were defective when sold. However, we find that factual questions remain as to whether the die heads became defective upon installation in the blow molders, and if so, whether Newman had reason to anticipate that danger might result from the use to which the die heads were put but failed to warn adequately. Accordingly, we find the trial court erred by granting summary judgment to Newman. See generally *Mitchell v. Rainey*, 187 Ga. App. 510, 513 (370 SE2d 673)(1988).

2. In the cross-appeal, Newman first enumerates as error the trial

court's denial of its motion for summary judgment made on the grounds that Collins "did not meet his burden of proving that [Newman] proximately caused the death of" his decedent, and that the die heads manufactured by Newman were not defective as a matter of law.

On a motion for summary judgment the movant carries the burden of establishing the nonexistence of any genuine issue of fact, even as to issues upon which the opposing party would have the trial burden, and all doubts are to be resolved against the movant. *Gaylor v. Jay &c. Chrysler-Plymouth-Dodge*, 183 Ga. App. 255, 256 (358 SE2d 655) (1987). A defendant-movant has the additional burden of piercing the plaintiff's pleadings and affirmatively negating one or more essential elements of the complaint. *Corbitt v. Harris*, 182 Ga. App. 81, 83 (354 SE2d 637) (1987).

In support of its argument that it has negated Collins' allegations regarding negligence and strict liability, Newman cites the testimony of Pritzker, Collins' own expert, that the die heads were not defective and that the defects were in Zarn's design and failure to warn. However, as this is not the type of case in which an expert's opinion introduced by the movant will authorize the grant of summary judgment, see *Yaeger v. Canadair, Ltd.*, 189 Ga. App. 207 (375 SE2d 469) (1988), Newman is not entitled to summary judgment based solely on Pritzker's opinion testimony. While opinion testimony adduced by the respondent is sufficient to preclude the grant of a summary judgment, it does not follow that the introduction of opinion evidence by the movant will authorize the grant of a summary judgment. See *Nichols v. Frey*, 185 Ga. App. 829, 830-831 (366 SE2d 212) (1988); see also *Yaeger*, supra.

Newman also contends that it has presented sufficient evidence to negate Collins' allegation that the defective design or negligent utilization of the Newman die head was the proximate cause of his son's death, in that Pritzker opined that the fatal shock must have been caused by the exposed high voltage terminals on the heater bands, and Proctor testified that she saw David Collins strike the electrical box, not the die head, with a wrench. In response, Collins cites Setliff's testimony that he was aware David Collins was planning to adjust the die head on blow molder G-7, and that he (Setliff) saw David Collins in the area where the die head knobs were adjusted when he was shocked, as well as Pritzker's testimony that the die heads were installed "within inches" of the exposed terminals. Further, Collins contends that the credibility of Proctor's testimony must be weighed by a jury because she was standing a floor above and a number of yards away from Collins' decedent when she saw him receive the fatal shock.

We agree with Collins that this is not one of those cases in which

the element of proximate cause is negated by evidence so clear, palpable, and undisputed as to warrant summary adjudication. The evidence does not unequivocally show that the die heads were free of manufacturing defects, and that the alleged defects in the design of the die heads and the use to which they were put by Zarn could not and should not have been foreseen by Newman. Further, there is a material factual dispute as to whether the installation and positioning of the die heads was the proximate cause of the injury, and whether the fatal shock was caused by the electrical box rather than the exposed terminals next to the die head adjustment knobs. Accordingly, we cannot find Newman is entitled to judgment as a matter of law, and thus we affirm the trial court's denial of summary judgment on these issues. See *Spivey v. Vaughn*, 182 Ga. App. 91 (354 SE2d 870) (1987).

3. Newman also enumerates as error the trial court's denial of its motion for summary judgment made on the basis that Collins cannot establish that Newman manufactured the die head installed on blow molder G-7.

The record discloses that both Newman and Paysour manufactured the die heads in use by Zarn at the time of David Collins' death. Roy McCollum, Zarn's project engineer, testified by affidavit that he was aware of "at least two companies who . . . fabricated die heads" for the Atlanta plant's blow molders, and that "there is no way to determine the fabricator of a particular die head." In addition, James Sharpe, general manager of Zarn's North Carolina plant, stated in his affidavit that, although the die heads at the Atlanta plant "were sometimes generically referred to as 'Newman' heads," he had no personal knowledge who manufactured the die heads. In response, Collins tendered an excerpt from deposition testimony Sharpe gave in a related lawsuit, but as Newman was neither present nor represented at this deposition and there is no evidence it had reasonable notice thereof, this deposition testimony is not usable against Newman. See OCGA § 9-11-32 (a); compare *Colbert Co. v. Newsom*, 125 Ga. App. 571 (1) (188 SE2d 266) (1972).

Nonetheless, we agree with Collins that this enumeration is controlled by this court's decision in *Scott v. Owens-Illinois*, 173 Ga. App. 19, 22-23 (3) (325 SE2d 402) (1984). While the evidence regarding the source of the die head on blow molder G-7 may not be sufficient to sustain Collins' burden of proof at trial, "[t]he fact that the evidence adduced by [Collins] in his response to the motion for summary judgment does not prove definitively which of the two manufacturers supplied the [die head] involved in the instant case—or, indeed, that the [die head's alleged defects] were due to fault on the part of either manufacturer—is of no significance to the trial court's deliberations as to whether or not to grant summary judgment. [Cits.]

The Summary Judgment Act does not authorize the trial court to sit as both judge and jury, weighing the evidence and deciding issues that are traditionally for the jury. [Cit.] The sole function of the court on a motion for summary judgment is, rather, to determine whether there exists a genuine issue of material fact. [Cits.] In the instant case it is clear that such issues exist." Id. Accordingly, we conclude the trial court did not err by denying summary judgment to Newman on this issue.

*Judgment affirmed in Case No. 77491; judgment reversed in Case No. 77490. Carley, C. J., and Deen, P. J., concur.*

DECIDED MARCH 8, 1989 —
REHEARING DENIED MARCH 23, 1989 —

*Ford & Haley, James L. Ford, David C. Cole*, for appellant.
*Harmon, Owen, Saunders & Sweeney, Frederick F. Saunders, Jr., Michael W. McElroy*, for appellee.