Travis Lee LAMB, by his Guardian ad
Litem, Stephen E. SHEPARD,
Plaintiff–Appellant,

v.

SEARS, ROEBUCK & COMPANY,
Defendant–Appellee.

No. 92–8005.

United States Court of Appeals,
Eleventh Circuit.

Sept. 15, 1993.

John Chapman Bell, Jr., Bell & Pannell, Augusta, GA, for plaintiff-appellant.

Patrick J. Rice, Hull, Towill, Norman & Barett, James B. Ellington, Augusta, GA, for defendant-appellee.

Before ANDERSON, Circuit Judge, MORGAN and JOHNSON, Senior Circuit Judges.

MORGAN, Senior Circuit Judge:

Appellant, through his guardian ad litem, brought this products liability action against the seller of an above-ground swimming pool for damages suffered when he nearly drowned after falling into the pool. Appellant alleges that the pool was defectively designed and that it contained inadequate and defective directions and warnings. At the close of evidence, the district court di-rected a verdict in favor of appellee. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 1982, Donald Fuller purchased a ten-foot in diameter, twenty-four inch high, above-ground swimming pool from the appellee, Sears, Roebuck & Company (Sears). The pool was manufactured by Muskin, Inc. for Sears. The instructions, which bore the Sears name, were prepared and printed by Muskin. The directions accompanying the pool warned that the pool should only be used under adult supervision. However, this pool did not come with a fence nor did any of the directions state that a fence was necessary for the proper use of the pool.

Mr. Fuller installed the pool in his backyard according to the directions provided by Sears. The directions instructed the purchaser to pick out a place in the yard for the pool, to draw a ten-foot circle, find the lowest spot within the circled area, and level the ten-foot area to the lowest spot in that circle. Mr. Fuller's backyard has a gentle slope to it and as a result of following Sears' instructions, the wall of the southern end of the pool was only fourteen to eighteen inches above ground level[1]. The southern side of the Fuller's backyard is adjacent to the Lamb property. After setting up the pool, Mr. Fuller kept the instructions and subsequently used them to order a replacement liner for the pool from Sears.

On October 23, 1985, Mrs. Jan Lamb, mother of the appellant Travis Lamb, was preparing supper while Travis and his four-year-old brother were playing in the carport area. The carport of the Lamb house is on the opposite side of the house from the Fuller's property. Sixteen-month-old Travis wandered away from his house, traveled at least one hundred and sixty feet to the Fuller's swimming pool, found his way into the pool and was discovered some time later by his mother. Lamb remained underwater for

---

1. Although Mr. Fuller testified that the dirt build up outside the pool wall had washed down to the pool over a period of time, there was ample evidence to allow a jury to infer that Mr. Fuller had cut into the slope of his yard following Sears' instructions and that this resulted in the lower height of the pool.

an undetermined period of time and suffered severe brain injuries from a lack of oxygen.

Photographs of the pool taken the day after the accident occurred were admitted into evidence during the trial. These photographs show that the rim of the pool wall is bent inward near the point where the pool wall is lowest. However, these photographs also show that the rim of the pool is bent inward in at least six separate locations, including an area above the pool filter which sits adjacent to the pool wall. In addition, several of the top rails of the pool wall are missing. Mr. Fuller testified that at some point between the time he purchased the pool and the date of the accident, several of the top rails were lost by children playing there. Mr. Fuller spread the remaining rails around the top of the pool wall and continued to use the pool without the missing rails. Mr. Fuller never attempted to purchase replacement rails, which were available through Sears.

Travis Lamb suffered severe brain damage from oxygen deprivation as a result of his fall into his next-door neighbor's pool. Through his guardian ad litem, Lamb filed this suit against Sears and Mr. Fuller. Mr. Fuller was dismissed as a party and the case went to trial before a jury on December 16, 1991. Following the close of evidence, the trial judge granted Sears' motion for a directed verdict on the grounds that the pool was not defective, that the dangers involved with the pool were open and obvious, and that Lamb had not presented sufficient evidence of causation. Notice of appeal was timely filed with this court.

## STANDARD OF REVIEW

■ In determining whether the district court erred in granting Sears' motion for a directed verdict, we apply the same standard as that applied by the district court. In evaluating the standard, this court has stated:

> On motions for directed verdict and for judgment notwithstanding the verdict the court should consider all of the evidence— not just that evidence which supports the

non-movers case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a questions for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.

*Miles v. Tennessee River Pulp and Paper Co.*, 862 F.2d 1525, 1528 (11th Cir.1989) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc)) [2].

## DISCUSSION

■ Lamb sued Sears under theories of negligence and strict liability for selling an above-ground pool that was defective. A defect can exist in the product design, in faulty construction, in the instructions, in the form and content of the warnings, or in the failure to warn. *Collins v. Newman Machine Co.*, 190 Ga.App. 879, 881, 380 S.E.2d 314, 317 (1989). Lamb contends that there were defects in the design and manufacture of the pool, that the directions were defective, and that the warnings were inadequate. In order for Lamb to prove his claims against Sears under his strict liability theory, he must show that the pool, "when sold by the manufacturer, was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of

2. Of course, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 7, 1981.

**1188**

the injury sustained." O.C.G.A. § 51–1–11(b)(1) (Supp.1992). To prove his claims of negligence, Lamb must show that Sears breached some duty owing to him and that said breach was the proximate cause of Lamb's injuries. *Bradley Center, Inc. v. Wessner*, 250 Ga. 199, 200, 296 S.E.2d 693, 695 (1982).

### I. DEFECTIVE DESIGN

■ Lamb contends that the swimming pool was negligently and defectively designed and manufactured in that it did not contain the appropriate safeguards to prevent the sides of the pool from collapsing, thereby creating a dangerous condition to minor children who could push over the side of the wall and fall into the pool. Lamb's expert witness, Dr. Harrenstien[3], testified that the pool, as originally designed and sold by Sears with all of its rails in place, could withstand at least fifty pounds of vertical pressure without buckling. Dr. Harrenstien also testified that the wall of the pool in its original condition provided enough support and structural integrity to keep a child the size of Lamb from pushing in the side walls of the pool, and he opined that, had the pool been on level ground with all its rails in place, Lamb probably would not have been able to get into the pool.[4] The uncontradicted evidence of Lamb's own expert shows that the walls of the pool, in its original condition, were structurally sound.

■ Lamb argues, however, that the condition of the pool at the time of the accident was a result of reasonably foreseeable wear and tear. The district court found, to the contrary, that the pool was in a materially altered condition from when it was sold.[5] The injuries suffered by Lamb must be the proximate result of a defect which existed in the product at the time it was sold, and if the product has been materially altered or modified by a third party after the sale, those injuries cannot be traced to be the proximate result of Sears' original design. *Talley v. City Tank Corp.*, 158 Ga.App. 130, 134–35, 279 S.E.2d 264, 269 (1981); *see also Union Carbide Corp. v. Holton*, 136 Ga.App 726, 730, 222 S.E.2d 105, 109 (1975) ("A seller is not liable when he delivered the product in a safe condition and subsequent mishandling or other causes made it harmful by the time it was consumed."). The photographs of the pool show a complete failure on the part of the Fullers to observe routine care and maintenance. This goes well beyond normal wear and tear.[6] We can come to no other conclusion but that the Fuller's swimming pool was in a materially altered condition.

■ Lamb asserts that Sears should have foreseen the possibility that the top rails would wear out, break, or be lost. Sears addressed this contingency by making replacement parts available to the purchaser, but Lamb argues that Sears could have and should have designed the rails so that they could not be removed or broken. We find the analysis in *Weatherby v. Honda Motor Co., Ltd.*, 195 Ga.App. 169, 393 S.E.2d 64 (1990) to be applicable here. In *Weatherby*, the plaintiff was injured while riding a motorcycle without the gas cap in place. The plaintiff argued that the vehicle was defective because the manufacturer did not provide the best or more advanced safety device to keep the gas cap connected to the gas tank. The Georgia court rejected this argument, stating that a manufacturer is under no obligation to make a product accident proof, foolproof, or

3. Dr. Harrenstien qualified as an expert in the field of human factors engineering and product and design safety engineering.

4. Dr. Harrenstien's opinion that Lamb would not have been able to get into the pool if it had been on level ground was based on his own speculation that Lamb gained entry into the pool at the point where the height of the sidewall is lowest.

5. As the district court stated, "[t]his pool, as shown in this photograph, is simply not in the same configuration that it was intended by the

manufacture[r] to be used and the evidence is clear on that point." (R5–662).

6. Although not adopted by Georgia, the Model Uniform Products Liability Act states,

" 'Alteration or modification' occurs when a person or entity other than the product seller changes the design, construction, or formula of the product.... *'Alteration or modifications' of a product includes the failure to observe routine care and maintenance, but does not include ordinary wear and tear.'* MUPLA § 112(D)(1).

even "more safe", as long as it is reasonably safe for its intended use. *Weatherby*, 195 Ga.App. at 170–71, 393 S.E.2d at 66; *see also Center Chemical Co. v. Parzini*, 234 Ga. 868, 218 S.E.2d 580 (1975) (recognizing that many products cannot be made completely safe for use and some cannot be made safe at all, but liability is not imposed merely because a product may be dangerous).

The function and purpose of a swimming pool is to retain water in order to allow people to make recreational use of the water. In this respect, the pool at issue was functioning exactly as intended at the time of the accident. Although the danger of drowning existed, there was no defect in the design and construction of the pool. Lamb's own expert testified that the sidewalls of the pool were strong enough to keep a child such as Lamb from pushing them in. At the time of its sale, the swimming pool was reasonably safe for its intended use and Sears was under no obligation to make it accident proof.

Furthermore, the pool had been allowed to deteriorate to the point where it was in a materially altered condition so that, even if it could be shown that Lamb pushed over the wall and fell into the pool, those injuries are not the proximate result of Sears design. Sears cannot be held responsible for the Fullers' failure to repair or replace broken parts, particularly where replacement parts were made readily available by Sears. The district court correctly directed a verdict on this issue.

## II. DEFECTIVE INSTRUCTIONS

■ Lamb contends that the directions accompanying the pool negligently and defectively instructed the user to dig out land for the pool with the effect of lowering the outside height of the pool wall, thereby making it easier for young children to get into the pool. Dr. Harrenstien testified that because of Lamb's height and weight at the time of the accident, Lamb would not have had the strength to pull himself over a fixed, twenty-four inch high barrier, but that it would have been relatively easy for Lamb to have climbed over an eighteen-inch high barrier. Lamb argues that the six to ten inch differential in wall height resulting from Sears'

directions was a defect which was a proximate cause of his injuries.

The height of the pool wall did not affect the pool's ability to fulfill its intended purpose of holding water. A fourteen-inch high pool holds water just as well as a twenty-four inch high pool and it presents the same danger of drowning. The pool in question, as is true with any above-ground pool that is not fenced, presented a hazard to every child in the neighborhood in inverse proportion to the size and age of the child. Obviously, the higher the wall, the taller the child must be to overcome that barrier. Conversely, if the barrier was lowered six to ten inches, then it would be easier for smaller children to overcome. The easier it was for Lamb to gain access to the pool, the greater the risk that he might drown or be injured by the water. As Lamb grew older and bigger, the pool wall became less and less of a barrier between him and the water. Without a fence around the pool, it was just a matter of time before Lamb became big enough to get into the pool regardless of the height of the pool wall. This should have been equally apparent to both Mrs. Lamb and the Fullers. The pool was not defective merely because Sears did not make it impossible for children to gain access to the pool.

## III. FAILURE TO WARN

■ Finally, Lamb argues that Sears failed to give adequate warnings of the potential danger to toddlers that a swimming pool presents. Specifically, Lamb contends that Sears was under a duty to warn consumers that following the directions could result in the surrounding earth encroaching upon the height of the pool wall, and that Sears should have warned that a fence around the pool was necessary to keep children out. A manufacturer of a product which involves danger to users generally has a duty to warn of such dangers. *Ford Motor Co. v. Stubblefield*, 171 Ga.App. 331, 335, 319 S.E.2d 470, 476 (1984). However, a manufacturer has no duty to warn of open and obvious dangers. *Giordano v. Ford Motor Company*, 165 Ga. App. 644, 645, 299 S.E.2d 897 (1983). Whether a danger is open and obvious is determined "on the basis of an objective view

of the product, and the subjective perceptions of the user or injured party are irrelevant." *Weatherby*, 195 Ga.App. at 171, 393 S.E.2d at 66. While in many cases, the obvious and common nature of a peril will be a question for the jury, it may be determined as a matter of law in plain and palpable cases. *Id.* at 173, 393 S.E.2d at 68. The existence of an open and obvious danger constitutes an absolute legal defense to the claims of negligent manufacture and design in failure to warn cases under Georgia law, *Pressley v. Sears, Roebuck & Co.*, 738 F.2d 1222, 1224 (11th Cir.1984), and if the danger is open and obvious, the manufacturer is entitled to judgment as a matter of law. *Weatherby*, 195 Ga.App. at 173, 393 S.E.2d at 68.

Georgia law recognizes that any reasonable adult knows or should know of the dangers presented to toddlers by any body of standing water. In Georgia "[t]he danger of drowning in a swimming pool . . . is an apparent, open danger, the knowledge of which is common to all, including a boy nine years of age." *McCall v. McCallie*, 48 Ga.App. 99, 100, 171 S.E. 843, 844 (1933). Although the twenty-four inch side of the pool presented a barrier to most smaller children, it was still possible for a child to find its way into the pool and suffer injuries. Since the danger of drowning in a pool is an open and obvious danger, it is axiomatic that to alleviate or reduce the danger a person must erect a fence or some similar means of preventing access to the pool[7]. Every expert at trial testified that a fence surrounding the pool would have prevented this accident. The danger of drowning presented by the pool, as well as the absence of a fence, was apparent to anyone viewing the pool and would not have been more apparent had Sears provided warnings.

A more difficult question is whether the increased danger to small children presented by the lower, fourteen-inch high pool wall was so obvious that Sears had no duty to warn. Lamb presented expert testimony that, from a biomechanical point of view, it was much easier for a child of Lamb's size to climb over the lower wall. However, if the pool was only fourteen inches high when sold, the risk of drowning would have been obvious, regardless of the ease or difficulty that a small child would have climbing into it. Lamb argues that since the pool was sold as a twenty-four inch high pool, the disparity in height and its attendant risks were not open and obvious to the average consumer.

We conclude, from an objective point of view, that a reasonable person who has owned a pool for over three years should be aware of a ten-inch differential in the height of the pool wall as well as the additional risk that the lower height would pose to small children. *See Coast Catamaran Corp. v. Mann*, 171 Ga.App. 844, 321 S.E.2d 353 (1984), aff'd, *Mann v. Coast Catamaran Corp.*, 254 Ga. 201, 326 S.E.2d 436 (1985) ("the nature and height of the [sailboat] mast were readily observable" and the "presence of the aluminum mast and danger resulting from its contact with high voltage power lines were obvious"). The differential in the height of the pool wall is easier to determine and more readily apparent than the clearance between a twenty-six foot high sailboat mast and overhead power lines. Therefore, we believe that Lamb did not meet his burden of presenting sufficient evidence to create a question of fact for the jury as to whether the increased risk to small children was so obvious as to preclude Sears' duty to warn.

Assuming, arguendo, that Sears did have a duty to warn of the dangers created by the decreased height of the pool wall, there still must be some reasonable connection between Sears' omission and the injuries suffered by Lamb. Whether proceeding under a strict liability or a negligence theory, proximate cause is an essential element of any cause of action sounding in

---

7. A local county ordinance applicable to the Fuller's pool required all above-ground swimming pools to be enclosed by a fence with a self-latching gate. However, the existence of such an ordinance has no bearing on Sears' duty to warn. Obviously, some purchasers of this type of pool lived in counties without any regulations regarding above-ground pools. If Sears had a duty to warn purchasers of the need for a fence, that duty existed regardless of whether the purchaser's county had a local ordinance regulating pools.

tort. *Talley*, 158 Ga.App. 130, 134, 279 S.E.2d 264, 269. Lamb has the burden of introducing some "evidence which affords a reasonable basis for a jury to conclude that it is more likely than not that the conduct of [Sears] was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, ... it becomes the duty of the court to direct a verdict for [Sears]." *Anneewakee, Inc. v. Hall*, 196 Ga.App. 365, 367, 396 S.E.2d 9, 10 (1990).

The only evidence of how Lamb got into the pool consists of Mrs. Lamb's testimony that she found Travis in the pool near the lower pool wall. Mrs. Lamb's testimony provides only the slightest thread of circumstantial evidence as to how Travis fell into the pool. No one witnessed Lamb wandering into the Fullers' backyard or falling into the pool. As the district court stated:

> There are a number of scenarios, maybe an endless number of scenarios, of how it could have happened, but we still don't know how it happened in this case.

> . . . . .

> We don't know whether he went around the back of the Lamb house or the back of the Fuller house to get there. He could have gone around both the Lamb and the Fuller houses to get to the pool.

> . . . . .

> [These possibilities] bring me to the inescapable conclusion that the proximate cause element is totally lacking here. (R–663–67).

Had the lower wall height been the only means of access into the water then this might be a different case, but there were at least six indentations where the pool wall was bent inward and a child could have fallen in. In addition, Lamb could have used the pool filter as a stepladder to get into the pool. Based on Mrs. Lamb's testimony, no reasonable or fair-minded jury could conclude that it was more likely than not that Lamb fell into the pool because of the lower height of the pool wall. A verdict imposing liability on Sears in this case would be based on pure speculation. The district court properly took this case out of the hands of the jury and directed a verdict in favor of Sears.

## CONCLUSION

At the time the pool was sold by Sears, there was no defect in its design. Furthermore, Georgia law clearly states that the hazards inherent in a swimming pool present an open and obvious danger, and consequently, Sears was under no duty to warn of such obvious dangers. In addition, Lamb has failed to present any evidence of a causal connection between the alleged defects in the pool and his injuries.

For all of the foregoing reasons, we AFFIRM the district court's direction of a verdict in favor of Sears.

ANDERSON, Circuit Judge, dissenting:

Respectfully, I disagree with two aspects of the opinion for the court. First, in my judgment, the evidence in this case created a question of fact for the jury on the issue of whether the instructions accompanying the pool were negligent and were a concurring proximate cause of the injuries. Second, I do not believe that the open and obvious defense is available as a matter of law on the evidence in this case with respect to the additional danger presented by a pool wall that was only 14 inches to 18 inches above ground on the outside, although was the full 24 inches high on the inside.