S94G0154. PAFFORD v. BIOMET et al.
(448 SE2d 347)

CARLEY, Justice.

In a surgical procedure performed at South Georgia Medical Center (Hospital) in 1988, a metal plate was installed in appellant-plaintiff's back in an effort to stabilize his spine. Some months later, the plate broke and was removed from appellant's back in a second operation.

After this second surgery, appellant became disabled. Relying upon OCGA § 51-1-11 (b), appellant filed the instant tort action against appellee-defendants Biomet and Pfizer Hospital Products Group, Inc. in 1990. According to the allegations of appellant's complaint, the plate had broken because it was defective and his ensuing disability had been caused by the breaking of the defective plate.

The trial court granted appellees' motions for summary judgment. The Court of Appeals affirmed on two grounds: Appellant's claim was barred by the applicable ten-year statute of repose; and, in any event, appellant had failed to prove that either of the appellees was the manufacturer of the plate. *Pafford v. Biomet*, 210 Ga. App. 486 (436 SE2d 504) (1993). This court granted certiorari to review the opinion of the Court of Appeals.

1. OCGA § 51-1-11 (b) (2) provides:

> No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the *first sale for use or consumption* of the personal property causing or otherwise bringing about the injury.

(Emphasis supplied.) However, no specific statutory definition of "first sale for use or consumption" is provided and, heretofore, our appellate courts have had no occasion to construe that phrase. The proper construction of "first sale for use or consumption" as employed in OCGA § 51-1-11 (b) (2) is, therefore, a question of first impression in Georgia.

Appellees urge, and the Court of Appeals agreed, that the applicable period of repose began to run more than ten years prior to appellant's commencement of the instant action, when the plate was first placed in the stream of commerce by its initial sale *to* the Hospital for the Hospital's ultimate sale to a patient. *Pafford v. Biomet*, supra at 487 (2). Chronologically, the Hospital's initial purchase of the plate was certainly the "first sale" of the plate by its manufacturer. However, OCGA § 51-1-11 (b) (2) does not provide that the period of repose commences on the date of the "first sale" of a product by its manufacturer. It provides that the period of repose commences on the date of the "first sale for use or consumption." Accordingly, unless the plate had been sold to the Hospital for the Hospital's "use or consumption," the period of repose did not commence on the date that the plate was initially purchased by the Hospital.

> Other state statutes of repose begin their limitations period as of "the date of first sale, lease or delivery" of the product, [cit.], or "the date that the party last parted with possession or control of the product," [cit.], giving manufacturers con-

trol over when the limitations period begins. Our legislature, however, chose to begin the limitations period at the date of "[first sale] *for use [or consumption]*," not landmarks such as those chosen by [other] legislatures.

(Emphasis in original.) *Chicopee, Inc. v. Sims Metal Works,* 391 SE2d 211, 215 (N.C. App. 1990).

Appellant urges that the applicable period of repose did not begin to run until two years prior to his commencement of the instant action, when the plate was eventually sold *by* the Hospital to him for the intended purpose of its placement in his back. This construction of "first sale for use or consumption" is entirely consistent with the concepts of "use" and "consumption" as employed in OCGA § 51-1-11 (b). Subsection (b) (1) of that statute recognizes a distinction between the individual who initially purchased a manufactured product for mere static retention in his inventory and that individual whose actual employment of the product was ultimately intended and, as that distinction is expressed therein, the first "use or consumption" of the product would be by the latter, rather than the former, individual:

> The manufacturer of any personal property sold as new property directly or *through a dealer or any other person* shall be liable in tort, irrespective of privity, to any natural person who may *use, consume,* or reasonably be affected by the property. . . .

(Emphasis supplied.)

The phrase "first sale for use or consumption" as employed in subsection (b) (2) of OCGA § 51-1-11 must be construed in pari materia with the concepts of "use" and "consumption" as employed in the other subsections of that statutory provision.

> It is an elementary rule of statutory construction that a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto.

*Ryan v. Commrs. of Chatham County,* 203 Ga. 730, 731-732 (1) (48 SE2d 86) (1948). Accordingly, by purchasing the plate for mere static retention in its inventory, the Hospital was not functioning as an active "user or consumer" thereof, but only as "a dealer or any other person" through whom the plate would ultimately be sold for its intended purpose of placement in the back of a patient. *Wilson v. Stu-*

*debaker-Worthington, Inc.*, 699 FSupp. 711, 718 (S.D. Ind. 1987). See also *Border v. Indian Head Indus.*, 792 P2d 111, 112 (Or. App. 1990); *Witherspoon v. Sides Constr. Co.*, 362 NW2d 35 (Neb. 1985); *Weeks v. Remington Arms Co.*, 733 F2d 1485, 1488, fn. 3 (11th Cir. 1984). The "first sale for use or consumption" did not occur until it was removed from the Hospital's inventory and sold to appellant for its actual intended purpose of placement in his back.

Contrary to the holding of the Court of Appeals, this construction of the statutory language does not "create an absolute liability on the manufacturer." *Pafford v. Biomet,* supra at 488 (2). Liability is not imposed upon a manufacturer by the provisions of OCGA § 51-1-11 (b) (2), but by the provisions of OCGA § 51-1-11 (b) (1). Subsection (b) (2) merely "sets an ultimate limit on which injuries shall be actionable." *Hill v. Fordham,* 186 Ga. App. 354, 357 (2) (367 SE2d 128) (1988). Accordingly, in order to recover, appellant must still prove that the plate, *"when sold by the manufacturer*[,] was not merchantable and reasonably suited to the use intended, and its condition *when sold* is the proximate cause of the injury sustained." (Emphasis supplied.) OCGA § 51-1-11 (b) (1). Thus, if the plate was not defective when it was initially sold to the Hospital and subsequently became defective only as the result of remaining in the Hospital's inventory for more than ten years, appellant has no viable claim against the manufacturer. If, however, the plate was defective when sold to the Hospital, the manufacturer cannot escape potential liability under OCGA § 51-1-11 (b) (1) by invoking the statute of repose defense created by subsection (b) (2) of that statute unless appellant was injured more than ten years after the defective plate had been sold to him for his "use or consumption." "A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs [within] that period, it is . . . actionable. [Cit.]" *Hill v. Fordham,* supra at 357 (2).

> "Any unfairness to defendants in requiring them to defend against unavoidably delayed actions is more than balanced by the intrinsic injustice of barring plaintiff's action before it can reasonably be brought." [Cit.]

*Whittaker v. Federal Cartridge Corp.*, 466 NE2d 480, 484 (Ind. App. 1984). See also *Wilson v. Studebaker-Worthington,* supra at 717-718.

Appellant's action was initiated within ten years of the date of the "first sale for use or consumption" of the allegedly defective plate and the Court of Appeals erred in holding otherwise.

2. Contrary to the alternative holding of the Court of Appeals, appellant did *not* have to "produce specific *conclusive* evidence that a particular defendant produced the plate. . . ." (Emphasis supplied.)

*Pafford v. Biomet*, supra at 487 (1). If each appellee produced evidence showing that it had not manufactured the plate, appellant would then be required only to "point to specific evidence giving rise to a triable issue [as to each appellee's status as the manufacturer]. [Cit.]" *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

> "[T]he fact that the evidence adduced by ([appellant]) in his response to the motion for summary judgment does not prove *definitively* [that one] of the two manufacturers supplied the ([plate]) involved in the instant case . . . is of no significance to the trial court's deliberations as to whether or not to grant summary judgment. [Cits.]"

(Emphasis supplied.) *Collins v. Newman Machine Co.*, 190 Ga. App. 879, 883 (3) (380 SE2d 314) (1989). See also *Scott v. Owens-Illinois, Inc.*, 173 Ga. App. 19, 22 (3) (325 SE2d 402) (1984).

(a) In support of its motion, appellee Biomet produced evidence that the chemical composition of the plate which had been placed in appellant's back differed from the specifications for any such plate ever manufactured by it or its predecessor. However, this evidence does not necessarily negate appellant's allegation that appellee Biomet is the manufacturer of the plate. Instead, such evidence is entirely consistent with appellant's allegation that the plate was defectively manufactured by appellee Biomet, the defect in manufacture being the chemical composition of the plate. Moreover, in opposition to the motion, appellant produced evidence that the instrumentation used to install the plate in his back bears the marking of Biomet's predecessor and that such instrumentation is not interchangeable for use in installing plates made by other manufacturers. Accordingly, the Court of Appeals erred in affirming the grant of summary judgment to appellee Biomet.

(b) In support of appellee Pfizer's motion, however, uncontroverted evidence was introduced to show that it was only the distributor of plates which had been manufactured by Biomet's predecessor and that it had distributed those plates only in Europe. Appellant's mere speculations to the contrary did not give rise to a genuine issue as to appellee Pfizer's status as the manufacturer of the plate. Accordingly, the Court of Appeals correctly affirmed the grant of summary judgment in favor of appellee Pfizer.

3. The judgment of the Court of Appeals is affirmed as to its affirmance of the trial court's grant of summary judgment in favor of appellee Pfizer and is reversed as to its affirmance of the trial court's grant of summary judgment in favor of appellee Biomet.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunt, C. J., and Fletcher, J., who dissent.*

FLETCHER, Justice, dissenting.

Construing the statutory language "first sale for use or consumption," the majority holds that the ten-year limitation period of OCGA § 51-1-11 (b) (2) did not commence until the spinal plate was implanted in Pafford's back, more than ten years after it was sold to the hospital. In reaching this conclusion, the majority places great emphasis on the legislature's use of the words "use" and "consumption" while ignoring basic rules of statutory construction and the full language of the statute which ties the running of the statute of repose to the *first sale for use or consumption* rather than the *first use* of the spinal plate. Because I believe the ten-year limitation period commenced when the spinal plate was first sold to the hospital for use by the hospital, I would hold that § 51-1-11 (b) (2) prevents the accrual of Pafford's cause of action.

It is the duty of a court, in construing a statute, to ascertain the legislative intent and purpose in enacting the statute and to give full effect to the legislative intent. *City of Roswell v. City of Atlanta*, 261 Ga. 657 (410 SE2d 28) (1991); *Board of Trustees v. Christy*, 246 Ga. 553, 554 (272 SE2d 288) (1980); OCGA § 1-3-1. Section 51-1-11 (b) (2) was enacted in 1978 for the purpose of imposing a ten-year limitation period on claims brought under the Georgia Products Liability Act and specifically provides:

> No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.

Like other statutes of repose, the purpose of § 51-1-11 (b) (2) is to grant manufacturers "repose" from claims arising from a particular product ten years after the date the product is first sold "for use or consumption" by providing a definite time beyond which a manufacturer is no longer subject to liability. Such limitations on the accrual of a right of action are "based upon reasonable expectations about the useful life of . . . a manufactured product." *Hill v. Fordham*, 186 Ga. App. 354, 357 (367 SE2d 128) (1988); see *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657, 660 (437 SE2d 308) (1993) (through statutes of repose, the legislature has concluded "that the time may arrive when past transgressions are no longer actionable"); *Wright v. Robinson*, 262 Ga. 844, 845 (426 SE2d 870) (1993) ("[a] statute of repose stands as an unyielding barrier to a plaintiff's right of action").

Statutes of repose are also intended to eliminate stale claims brought after records have been lost or disposed of, witnesses have died or moved away, and when proof of causation is more difficult due to the possibility of third-party neglect or abuse, mishandling, or poor

maintenance of the product. See *Craven*, 263 Ga. at 659. In this regard, statutes of repose are similar to statutes of limitation in that they are

> designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim[,] it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

*Allrid v. Emory Univ.*, 249 Ga. 35, 39 (285 SE2d 521) (1982).[1]

Consistent with the legislative intent in enacting § 51-1-11 (b) (2), the language of the statute ties the running of the limitation period to the "first sale for use or consumption" of a product and not the product's "first use" as urged by the majority opinion. Indeed, in holding that the limitation period found in § 51-1-11 (b) (2) did not begin to run until 1988 when the plate was surgically implanted, the majority abrogates the clear purpose of the statute, rendering the defendants' liability indefinite and dependent not upon the "first sale for use or consumption" of the product or the expected useful life of the product but upon the hospital's arbitrary retention of the plate.

I believe a better construction, and one which gives § 51-1-11 (b) (2) its intended meaning, is that the spinal plate was "first [sold] for use or consumption" sometime between 1972 and 1977 when it was sold to the hospital. The plate was not sold to the hospital as a "dealer" or for "mere static retention" in the hospital's inventory, majority opinion at 542, but for use by the hospital as part of its provision of professional medical services. See Restatement (Second) of Torts, § 402A, comment l (1965) (including within the definition of "consumer" one who prepares the product for consumption and

---

[1] As stated by the Oregon Supreme Court in *Johnson v. Star Machinery Co.*, 530 P2d 53, 56 (270 Or. 694) (1974), the rationale behind the preclusion of a right of action by way of a statute of repose, often even before an injury occurs, is two-fold.

The first concerns the lack of reliability and availability of evidence after a lapse of long periods of time. This rationale primarily protects defendants who, without prior notice of pending claims, would necessarily find it extremely difficult, if not impossible, to mount a defense because of the nonpreservation of evidence and the disappearance or death of witnesses after a long lapse of time. However, the reliability of plaintiff's evidence relating to long-past occurrences, transactions or conditions is also a relevant feature.

The second rationale concerns the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability. [Cits.]

within the definition of "user" one who uses the product for the purpose of doing work on it). This construction serves the dual purpose of the statute in that it provides a definite and ascertainable date beyond which the manufacturer of the plate may no longer be held liable for manufacturing defects and it eliminates Pafford's stale claim with its inherent unreliability and concomitant evidentiary problems.[2]

Despite the disadvantage to Pafford, it is plain that the legislature intended to create a definite ten-year period beyond which the manufacturer of a product would no longer be held liable for manufacturing defects. Because Pafford's cause of action did not accrue within the statutory time period, I would affirm the decision of the Court of Appeals.

I am authorized to state that Chief Justice Hunt joins in this dissent.

DECIDED SEPTEMBER 19, 1994 —
RECONSIDERATION DENIED OCTOBER 17, 1994.

*Sutton & Associates, Berrien L. Sutton,* for appellant.
*John A. Gilleland, Sullivan, Hall, Booth & Smith, John E. Hall, Jr., Roger S. Sumrall, T. Andrew Graham, Love & Willingham, Michael J. Hannan III,* for appellees.

---

[2] After more than five years of discovery neither party has been able to produce any documents or records regarding the hospital's purchase of the plate or conclusively establishing who made the subject plate. In addition, it appears from the record that the hospital employee who informed one witness that the plate had been at the hospital for more than fifteen years has since retired, sustained a stroke, and is now incompetent to testify.