**Sharon SIMMONS, administrator of the estate of Trina Elliott, deceased, Plaintiff–Appellant,**

**v.**

**Haiba SONYIKA, M.D., Myrtle Kai, R.N., CFNP, Southside Healthcare, Inc., United States of America, Defendants–Appellees.**

No. 04–14180
Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Dec. 30, 2004.

Stanley J. Heller, Cirignani, Heller, Harman & Lynch, LLP, Chicago, IL, for Plaintiff–Appellant.

James Mackiell Hunter, Jason P. Wright, Holland & Knight, LLP, Amy Levin Weil, Robert David Powell, Atlanta, GA, for Defendants–Appellees.

Before BIRCH, BARKETT and FAY, Circuit Judges.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA, PURSUANT TO O.C.G.A. § 15–2–9. TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

In this case we are asked to determine whether Georgia's five year statute of repose for medical malpractice actions, O.C.G.A. § 9–3–71(b), is extended by Georgia's unrepresented estate statute, O.C.G.A. § 9–3–92. Plaintiff Sharon Simmons, as administrator of the estate of Trina Elliott, appeals the order of the district court granting a motion to dismiss in favor of the United States, Dr. Haiba Sonyika, M.D., Myrtle Kai, R.N., and Southside Healthcare, Inc. as to Georgia medical malpractice claims.[1] The district court held that the claims were barred by the applicable statute of ultimate repose. Under Georgia law, the medical malpractice statute of ultimate repose is an absolute bar that extinguishes a plaintiff's claims. Georgia law also contains an unrepresented estate statute, which allows that the time period for which an estate is unrepresented may not be counted in calculating

---

1. The United States has indicated that it will not participate in this appeal.

any limitations period. In this case, Trina Elliott's estate went unrepresented for 344 days. If this tolling provision applies, then this suit may proceed. On the other hand, if the unrepresented estate statute has no effect on the statute of ultimate repose, the case is time-barred. Because it is unclear under Georgia law whether the medical malpractice limitations period can be tolled by the unrepresented estate statute, we certify the question to the Supreme Court of Georgia for review. Question CERTIFIED.

## I. BACKGROUND

The facts of this case, still in the early stages of discovery, are thus far undisputed. On June 5, 1997, Trina Elliott, ("Ms. Elliott"), visited Southside Healthcare, Inc. ("Southside"), which practiced obstetrics and gynecology. At this visit, Dr. Haiba Sonyika, M.D., ("Dr. Sonyika"), one of Southside's physicians, ordered a routine pap smear. On June 11, 1997, the results of that pap smear revealed that Ms. Elliott had a high grade squamous intraepithelial lesion moderate to severe dysplasia. Myrtle Kai, a registered nurse at Southside, ("Nurse Kai"), noted "Letter" on Ms. Elliott's pap smear report, the medical chart did not contain a copy of the letter.

On November 3, 1997, Southside became a federally supported health center under the Federally Supported Health Centers Assistance Act of 1992. This transition also gave Southside's staff federal employee status.

Ms. Elliott returned to Southside on February 6, 1998. Dr. Sonyika again attended to Ms. Elliott, who complained of prolonged vaginal bleeding. Dr. Sonyika assessed Ms. Elliott's condition as "a history of menometrorrhagia, resolving." Dr. Sonyika released Ms. Elliott without further tests. Ms. Elliott again returned to Southside on June 26, 1998, because of excessive vaginal discharge. During this visit, Dr. Christopher Marine ("Dr. Marine") noted severe dysplasia, and diagnosed Ms. Elliott with vaginitis, probable urinary tract infection, and possible endometritis. Dr. Marine obtained a new pap smear from Ms. Elliott, and on July 7, 1998, the pap smear revealed "severe dysplasia CIN3 with HPV associated cellular changes." Endocervical involvement, a colposcopy, and a biopsy were all suggested. Nurse Kai again noted "Letter" on the pap smear report, but again Ms. Elliott's medical chart did not contain a copy of that letter.

Between June 26, 1998 and March 30, 1999, the Southside's medical staff treated Ms. Elliott six times for various problems, including vaginal bleeding and discharge, cramping, lower abdominal pain and blood clots. On March 31, 1999, Dr. Sonyika performed a colposcopy and several cervical biopsies. Based on the biopsies, Ms. Elliott was diagnosed with invasive squamous cell carcinoma, moderately differentiated. Ms. Elliott died less than a year later from cervical cancer.

On March 8, 2001, the Plaintiff, Sharon Simmons ("Simmons"), as representative of Ms. Elliott's estate, filed a complaint in the Superior Court of Fulton County, Georgia, alleging medical malpractice in the treatment of Ms. Elliott, from June 1997 through 1999. The complaint named Southside, Dr. Sonyika, and Nurse Kai as defendants (collectively, the "Southside Defendants"). Dr. Marine was also named as a defendant. Because Southside became a federally supported health center in November 1997, any subsequent claims for acts of negligence were covered by the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.* (2003).

The United States of America (the "United States") intervened in the action, and substituted itself as a Defendant for any alleged acts of negligence committed

by Southside Defendants after November 3, 1997. The United States then removed the case to federal court on July 30, 2001. The United States filed a motion to dismiss based upon Simmon's failure to exhaust the requisite state court remedies prior to filing the lawsuit. On December 12, 2001, while the motion to dismiss was pending, Simmons did, in fact, exhaust the necessary state court procedures. Nonetheless, on February 19, 2002, the District Court for the Northern District of Georgia dismissed the United States as a defendant due to Simmon's neglect in exhausting appropriate administrative remedies. The case against the Southside Defendants for acts committed before November 3, 1997, was remanded to the Superior Court of Fulton County due to a lack of subject matter jurisdiction.[2] Simmons did not appeal or file a motion for reconsideration of this ruling.

Four months later, on June 5, 2002, Simmons filed the instant case in the Northern District of Georgia, naming only the United States as a defendant. Then, on September 6, 2002, with the case against the Southside Defendants still pending in state court, Simmons filed a motion with the district court to join the state claim pursuant to 28 U.S.C. § 1367. In response, the district court held two conferences to determine if joinder was feasible. In resolution, the district court entered an order, consented to by the parties, whereby Simmons agreed to dismiss the state court action and amend the federal complaint to join the Southside Defendants. The Southside Defendants, in turn, agreed to waive their right to a jury trial.

Simmons subsequently filed her amended complaint against the United States and Southside Defendants on March 10, 2003. The Southside Defendants then sought dismissal of the action on grounds that the ultimate statute of repose and the statute of limitations barred the state court claims against them. The district court granted this motion, and Simmons now appeals.

## II. DISCUSSION

 The district court granted summary judgment by interpreting Georgia law to find that the statute of ultimate repose barred Simmons' claims. Our "standard of review for a motion to dismiss is the same for the appellate court as it was for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir.1990). Thus, we review a district court's order granting a motion to dismiss under Rule 12(b)(6) *de novo.* *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir.2004). We accept the allegations in the complaint as true and construe them "in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir.2003) (per curiam). Finally, "a motion to dismiss is granted only when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Spain*, 363 F.3d at 1187 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

Because the applicability of the ultimate statute of repose to this case is a question of state law, we must review the district court's decision in accordance with Georgia law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We must determine whether a statute of

---

**2.** The district court dismissed all state claims against Dr. Marine because Simmons only alleged negligence against Dr. Marine for acts after November 3, 1997, when he was deemed a federal employee. As such, the United States was substituted as a defendant for claims arising after that date, and Dr. Marine was not included with the Southside Defendants when the district court remanded the case to state court.

ultimate repose can be tolled in medical malpractice actions. "Where there is doubt in the interpretation of state law however, 'a federal court should certify the question to the state supreme court to avoid making unnecessary Erie "guesses" and to offer the state court the opportunity to interpret or change existing law.'" *CSX Transp., Inc. v. City of Garden City,* 325 F.3d 1236, 1239 (11th Cir.2003) (citations omitted).

Georgia law provides that "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." O.C.G.A. § 9–3–71(a). This limitation is expanded by a statute of ultimate repose, which states that "in no event may an action for medical malpractice by brought more than five years after the date on which the negligent or wrongful act or omission occurred." O.C.G.A. § 9–3–71(b) (Supp.2004).

In the instant case, Simmons' complaint alleges that the negligent acts occurred in June 1997, when the Southside Defendants failed to report the results of Ms. Elliott's pap smear to her. Under the statute of repose, then, the cause of action expired in June 2002. Unfortunately, Simmons filed the complaint on March 10, 2003. By virtue of statute of repose alone, her action would be time-barred.

Nevertheless, Simmons contends that the action was brought within the appropriate limitations period because of Georgia's tolling provision for unrepresented estates. Under O.C.G.A. § 9–3–92:

> The time between the death of a person and the commencement of representation upon his estate or between the termination of one administration and the commencement of another shall not be counted against his estate in calculating any limitation applicable to the bringing of an action, provided that such time

shall not exceed five years. At the expiration of the five years, the limitation shall commence, even if the cause of action accrued after the person's death. O.C.G.A. § 9–3–92 (1982). Ms. Elliott passed away on April 7, 2000, and Simmons was appointed as the administrator of Ms. Elliott's estate 344 days later, on March 8, 2001. If the tolling period is indeed applicable, the statute of repose began to run on October 3, 1998, making the March 10, 2003 complaint timely.

The conundrum for us is whether the unrepresented estate statute does, in fact, toll the statute of ultimate repose in medical malpractice actions. Recently, in *Christian v. Atha,* the Court of Appeals of Georgia wrote that "the statute of repose imposes an absolute limit within which an action may be brought." 267 Ga.App. 186, 187, 598 S.E.2d 895, 896 (2004). In *Christian,* the plaintiff argued that the statute of repose did not apply to her medical practice action because the injury itself manifested less than five years before she filed suit. The last alleged negligent act attributed to the defendants, however, occurred outside the five-year window. The appellate court affirmed the grant of summary judgment in favor of the defendants, stating:

> A statute of repose stands as an unyielding barrier to a plaintiff's right of action ... [which] destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists.

*Id.* (quoting *Wright v. Robinson,* 262 Ga. 844, 845, 426 S.E.2d 870 (1993)).

While the phrase "absolute limit" would seem to settle the instant matter, there are still some unresolved issues. *Christian* addressed whether the time in which it takes an injury to become detectable could toll the statute of repose. That was answered in the negative. *See also Hill v.*

*Fordham,* 186 Ga.App. 354, 357, 367 S.E.2d 128 (1988) ("[B]y definition, a statute of ultimate repose cannot be 'tolled' to permit actions to be brought for injuries which did not occur until after the statutory period had expired."). Simmons' case, however, involves whether a separate statutory provision might toll the ultimate statute of repose. Georgia's statute of limitation for medical malpractice actions expressly provides that both the statute of limitation, § 9–3–71(a), and the statute of ultimate repose, § 9–3–71(b), do not limit the application of § 9–3–73, which recognizes certain disabilities as exceptions to a time bar on filing actions:

> Except as provided in this Code section, the disabilities and exceptions prescribed in Article 5 of this chapter in limiting actions on contracts shall · be held applicable to actions, whether in tort or contract, for medical malpractice actions.

O.C.G.A. § 9–3–73(a). This would seem to indicate that the Article 5 disabilities and exceptions would indeed apply to § 9–3–71. Interestingly, Article 5 of the Georgia Code contains the unrepresented estate tolling provision. *See* O.C.G.A. § 9–3–92. Thus, in order to extend the statute of repose, the language of § 9–3–71, § 9–3–73, and § 9–3–92 must be read together.

The district court, however, ruled that the mandatory language of § 9–3–71(b) trumped the mandatory language contained in § 93–3–92, and dismissed the action. While we believe this precise question to be one of first impression regarding Georgia law, case law does illuminate several analogous situations. *See Wright v. Robinson,* 262 Ga. 844, 426 S.E.2d 870 (1993) (Georgia Supreme Court refused to permit Georgia's renewal statute to toll the statute of repose); *Charter Peachford Behavioral Health Sys., Inc. v. Kohout,* 233 Ga.App. 452, 456–57, 504 S.E.2d 514, 521 (1998) (finding that whether the accrual of an action is delayed by

"infancy, incompetency, or fraud, which may toll the statute of limitation for up to five years, nothing stops the abrogation of the action by the statute of repose"); *Hill v. Fordham,* 186 Ga.App. 354, 367 S.E.2d 128 (1988) (refusing to apply the Article 5 fraud exception, § 9–3–96, to toll the statute of repose, and instead imposing the doctrine of equitable estoppel to prevent the defendant who committed actual fraud from asserting the statute of repose as a defense).

Although Georgia law has yet to address the applicability of the statute of repose in light of the unrepresented estate statute, in at least one instance Georgia law explicitly states when *not* to apply the statute of repose. Notably, O.C.G.A. § 9–3–73(e) "plainly states that the five-year statute of repose ... does not apply to foreign object medical malpractice actions." *Abend v. Klaudt,* 243 Ga.App. 271, 274–75, 531 S.E.2d 722, 726 (2000). Furthermore, when a defendant committed actual fraud to avoid liability, Georgia courts apply the doctrine of equitable estoppel to toll the statute of repose rather than the statutory fraud exception, which, like the unrepresented estate statute, is contained in Article 5 of the Georgia Code pertaining to the tolling of limitations. *See Miller v. Vitner,* 249 Ga.App. 17, 17–18, 546 S.E.2d 917, 918 (2001). *Miller* would seem to indicate that the exceptions carved out in Article 5 only toll the two-year statute of limitation contained in § 9–3–71, and not the statute of repose.

Nonetheless, we cannot determine a clear delineation in Georgia law that allows us to confidently decide this question. Considering the lack of authority on this precise issue, we choose to certify the following question to the Georgia Supreme Court: WILL GEORGIA LAW ALLOW THE UNREPRESENTED ESTATE STATUTE, O.C.G.A. § 9–3–92, TO TOLL

THE ULTIMATE STATUTE OF RE-POSE IN MEDICAL PRACTICE ACTIONS, O.C.G.A. § 9–3–71(b), BY THE PERIOD DURING WHICH THE ESTATE WENT UNREPRESENTED.

### III. CONCLUSION

This appeal comes after the district court interpreted Georgia law to find that the § 9–3–92 did not affect § 9–3–71(b), and dismissed the Plaintiff's suit. Because we find Georgia law is not clear in regard to this issue we have certified the question above. In so doing, we do not intend to restrict the court's consideration of the issue presented. "This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given." *Washburn v. Rabun*, 755 F.2d 1404, 1406 (11th Cir.1985). To assist the court in considering this question, the record in this case and the parties' briefs shall be transmitted to the court.

QUESTION CERTIFIED.