A01A2446. DEPARTMENT OF TRANSPORTATION v. CARR.
A01A2447. DEPARTMENT OF TRANSPORTATION v. JENKINS et al.
(564 SE2d 14)

RUFFIN, Judge.

These appeals arise out of a fatal automobile wreck that occurred on the South Dalton Bypass (the "Bypass") in Whitfield

---

County. The surviving relatives sued the Georgia Department of Transportation ("DOT"), alleging that the wreck was caused by DOT's negligent maintenance of the Bypass. DOT moved to dismiss the complaints, arguing that the Bypass was a county road and that it was protected by sovereign immunity. The trial court denied DOT's motions, but certified the orders for immediate review. We granted DOT's applications for interlocutory appeal, and for reasons that follow, we affirm.

Initially, we must address whether DOT's motions, though couched as motions to dismiss, should be treated as motions for summary judgment. Because it is clear that DOT, the plaintiffs, and the trial court all relied on numerous documents outside the pleadings, the motions to dismiss should be treated as motions for summary judgment under OCGA § 9-11-56.[1] Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]

The evidence on file in this case is largely undisputed. It shows that on July 23, 1999, Jerry Benton, Jr. was driving a truck along the Bypass with a passenger, Benjamin Phillips. After the tires of Benton's truck went over the road shoulder, he lost control, and the truck rolled over. Both Benton and Phillips died as a result of the wreck. Benton's mother, Leah Benton Jenkins, sued DOT alleging it negligently maintained the road shoulder.[3] Phillips' sole surviving son, Logan Carr, through his guardian, Tina Carr, also sued DOT for negligence.

DOT asserts that the trial court erred in denying its motions to dispose of these claims because the undisputed evidence shows that, on the date of the wreck, it had no duty to maintain the Bypass and thus could not be held liable for negligently maintaining the road. DOT also asserts that the trial court erred in failing to apply the inspection exception to the state's waiver of sovereign immunity. Finally, DOT contends that the trial court erred in granting the plaintiffs' motion to strike portions of an affidavit filed in support of its motions. Because each of DOT's appeals presents identical issues, we will address them jointly.

---

[1] See *Peeples v. City of Atlanta*, 189 Ga. App. 888-889 (1) (377 SE2d 889) (1989) (physical precedent only).

[2] OCGA § 9-11-56 (c). See also *Murray v. Dept. of Transp.*, 240 Ga. App. 285 (523 SE2d 367) (1999).

[3] Jenkins filed the complaint in her individual capacity and as the administratrix of Benton's estate.

1. To address DOT's arguments, we must determine whether the evidence establishes that the department had a duty to maintain the road before July 23, 1999, when the wreck occurred. This is because "[t]he threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care. Whether a duty exists upon which liability can be based is a question of law"[4] that must be resolved prior to any discussion of sovereign immunity.[5] As a general matter, the Georgia Code of Public Transportation[6] requires DOT to maintain public roads within the state highway system,[7] but, subject to a few limitations, prohibits the department from maintaining any public road not on the state highway system.[8] Because the state has only waived its sovereign immunity for the "torts of state officers and employees while acting within the scope of their official duties or employment,"[9] the pivotal question is whether, at the time of the wreck, the Bypass was part of the state highway system.

The Code classifies Georgia's public roads into three systems: (1) a state highway system; (2) county road systems; and (3) municipal street systems.[10] The state highway system includes roads which are "designated by [DOT] as part of the state highway system."[11] The designation of a road as a state highway is governed by OCGA § 32-4-21, which provides in part:

> Whenever the [State Transportation Board], or the commissioner [of transportation] when the board is not in session, deems it necessary and in the public interest to have a new or existing public road designated as part of the state highway system, whether as additional mileage or as part of a substitution or relocation, the board, by resolution, or the commissioner, by written notice to the board, may designate such road to be a part of the state highway system. *If the road proposed to be designated is a part of either a county road system or a municipal street system, the department shall give written notice to the county or municipality of the effective date that such road shall become part of the state highway system.*[12]

---

[4] (Citation and footnote omitted.) *City of Rome v. Jordan*, 263 Ga. 26, 27 (1) (426 SE2d 861) (1993).

[5] See id. at n. 1.

[6] OCGA § 32-1-1 et seq.

[7] See OCGA § 32-2-2 (a) (1).

[8] See OCGA § 32-2-61 (e).

[9] OCGA § 50-21-23 (a).

[10] See OCGA § 32-4-1.

[11] OCGA § 32-4-1 (1).

[12] (Emphasis supplied.) See also OCGA § 32-1-3 (2), (5) (defining "Board" as "State Transportation Board" and "Commissioner" as "the commissioner of transportation").

In this case, it is undisputed that the Bypass was formerly a Whitfield County road. Relying on OCGA § 32-4-21, DOT argues that the Bypass did not become a state highway until January 5, 2000, the date the transportation commissioner issued a written notice to Whitfield County that it was adding the road to the state highway system.

In response, the plaintiffs point to evidence showing that DOT had taken over control of the Bypass before the July 23, 1999 wreck. The record shows that on April 9, 1997, the DOT commissioner issued a notice of intent to add the Bypass to the state highway system "once improvements are completed to bring [the road] up to State Route standards." The notice further provided that the commissioner intended "to approve an Order thirty days from receipt by [the Chairman of the Whitfield County Board of Commissioners and the Mayor of Dalton] of this notice and by which Order the State Highway System will be revised."

It appears that the Chairman of the Whitfield County Board of Commissioners and the Mayor of Dalton received the notice of intent by May 14, 1997, but that the 30-day time frame to complete the improvements was a little unrealistic. The improvements required to bring the Bypass up to state route standards were not completed and accepted by DOT until January 11, 1999. A letter from DOT to the county, notifying the county that the construction was complete, states that the Bypass was not, at that time, "located on the State Highway System" and that it was, therefore, the county's "responsibility to assume the maintenance of this project as of January 11, 1999."

However, in June 1999, DOT took over those maintenance responsibilities. According to Charles Harden, the DOT district maintenance engineer in charge of maintaining the Bypass, communications about DOT assuming maintenance of the road started "in the late spring of '99[, when he] received some correspondence about the project . . . finishing . . . up and the question of taking it onto the system." Harden testified in his deposition that ultimately, in June 1999, "[m]y instructions . . . [were] that the appropriate information had been signed off by both local officials and our people; and I discussed that with my supervisor, and we made arrangements to place signs and take it on the system, to make signage changes to the route." Harden further stated that an individual in his office who normally handles routing changes showed him a document indicating that DOT had assumed responsibility for the Bypass and that it had become part of the state system before June 1999. Accordingly, in June, Harden ordered maintenance workers to post state route signs along the road, a task that they completed that month, and to start maintaining the Bypass. As far as Harden was concerned, from

that point forward DOT had accepted responsibility for the Bypass and was maintaining it just as it would any other state highway.

Harden's supervisor, Charles Law, stated in his deposition that in June 1999, he too thought that the commissioner had signed the order for the Bypass to become part of the state highway system, but that he later learned that order had not been signed. According to Law, the Bypass was physically ready to become a state highway in June, and the only reason it was not "officially" part of the system was because the commissioner had not, in fact, signed the order.

Harden and Law were not the only DOT representatives who, in June 1999, thought the Bypass was already designated as a state highway. Kenny Roach, an assistant district maintenance engineer, testified that the state maintenance engineer ordered him to put up state highway system signs along the Bypass. Roach assumed that it was already a state highway because he was putting up state highway signs. And Devon Woodworth, the DOT area engineer, stated that she considered the Bypass part of the state system and that her office maintained the road accordingly. Based on her belief that it was a state highway, in June 1999, Woodworth informed Whitfield County officials that the Bypass "was now on the state system and that it was [DOT's] road." According to Woodworth, both the county and DOT clearly understood that DOT was assuming control of the Bypass and that the county was relieved of its responsibilities. DOT has maintained the Bypass since that time.

For a duty to arise in this case, DOT was not required to strictly comply with the Public Transportation Code requirements concerning the designation of state highways. The legislature intended the Code "to provide an effective legal basis for the organization, administration, and operation of an efficient, modern system of public roads."[13] Accordingly, the Code establishes a system for delegating administrative and operational responsibilities for the public roads among the state, counties, and municipalities.[14] As a general rule, however, "substantial compliance with any statutory requirement, especially on the part of public officers, shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law."[15] We are unaware of any provision demanding strict compliance with the designation requirements before a road can be considered a state highway. To the contrary, the Public Transportation Code explicitly favors a liberal construction of its terms to enable DOT "to perform all acts which are necessary, proper, or incidental to the efficient operation and devel-

[13] OCGA § 32-1-2.
[14] See id.; *Jordan v. Way*, 235 Ga. 496, 498 (3) (220 SE2d 258) (1975).
[15] OCGA § 1-3-1 (c).

opment of the department and of the state highway system."[16]

In light of this clear expression of the legislature's intent favoring liberal construction and only substantial compliance, we find no merit in DOT's argument that the Bypass was not a state highway because the commissioner had not yet given Whitfield County written notice of the designation, as required by OCGA § 32-4-21. Although the statute contemplated that DOT would give the county prior written notice, it did not "declare that non-compliance would negate the procedure."[17] Furthermore, DOT's failure to strictly comply with the written notice requirement did not injure the rights of DOT, the county, or the public.[18] Indeed, DOT's sole basis for challenging the designation is the absence of the commissioner's written notice to the county, and it appears that the department had done everything else necessary for the Bypass to be considered a state highway by the end of June 1999. In fact, as discussed above, the commissioner had previously issued a written notice to Whitfield County of DOT's intent to add the Bypass to the state highway system once necessary improvements were completed, and those improvements were finished in January 1999. Moreover, in June 1999, DOT was exclusively maintaining the Bypass as a state highway, had changed the road signs to show that it was a state highway, and verbally notified Whitfield County that it was a state highway and the county was relieved of its responsibility to maintain it.

Although the process used did not strictly comply with the Public Transportation Code, it nevertheless resulted in an efficient transition of responsibility for administering the Bypass from the county to DOT, as intended by the Code,[19] and we cannot conceive of any harm to either of those two entities flowing from the late issuance of the commissioner's written notice.[20] While it might have been a better practice for DOT to give written notice of the designation to the county before actually taking over control of the Bypass, under the circumstance of this case, we do not believe that failure to do this was fatal.[21] Accordingly, we agree with the trial court that, on the date of the accident, the Bypass was part of the state highway system and that DOT, therefore, had a duty to maintain the road. Inasmuch as

---

[16] OCGA § 32-2-2 (b).

[17] *State of Ga. v. Battise*, 177 Ga. App. 583, 584 (340 SE2d 240) (1986) (also recognizing that "[s]tatutes directing a mode of proceeding by public officers, which are designated to promote the method, system uniformity, and dispatch in such proceeding, will be regarded as directory only if a disregard thereof will not injure the rights of the parties, and the statute does not declare what result shall follow non-compliance therewith, nor contain negative words importing a prohibition of any other mode of proceeding than that prescribed").

[18] See id.

[19] See OCGA §§ 32-1-2; 32-2-2 (b).

[20] See *Battise*, supra.

[21] See id.

the plaintiffs have alleged that DOT was negligent in performing that duty, and DOT has not shown that such claim is outside its waiver of sovereign immunity for the torts of its officers and employees,[22] the trial court properly denied DOT's motion.

2. Although plaintiffs' claims clearly rest on DOT's alleged negligence in maintaining the highway, DOT asserts that the trial court erred in not applying the inspection exception to the state's limited waiver of sovereign immunity. Under this exception, the state cannot be held liable for

> [i]nspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property other than property owned by the state to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety.[23]

Again, however, the plaintiffs do not seek to hold DOT liable for negligently inspecting the road. Thus, notwithstanding DOT's attempt to contort plaintiffs' claims into a negligent inspection theory of recovery, this assertion is without merit.

3. DOT also argues that the trial court erred in striking portions of the affidavit of DOT's Systems and Classifications Branch Chief, who concluded that "[p]rior to January 5, 2000, [the Bypass] remained a county road and was not a part of the State Highway system." Inasmuch as this statement constituted a mere legal conclusion and not a statement of fact, it could not be used to support DOT's motions for summary judgment.[24] Accordingly, we find no error.

*Judgments affirmed. Johnson, P. J., concurs. Ellington, J., concurs in the judgment only.*

DECIDED MARCH 11, 2002 —
RECONSIDERATION DENIED APRIL 9, 2002 —

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Robert C. Edwards, Assistant Attorney General*, for appellant.

*Watkins, Lourie & Roll, Joseph W. Watkins, Lance D. Lourie*, for appellee (case no. A01A2446).

---

[22] See OCGA § 50-21-23.

[23] OCGA § 50-21-24 (8).

[24] See *GE Capital Mtg. Svcs. v. Clack*, 271 Ga. 82, 85 (2) (b) (515 SE2d 619) (1999) (citing *Bradley v. Tattnall Bank*, 170 Ga. App. 821 (3) (318 SE2d 657) (1984) (physical precedent only)).

*Moore & Moore, Willis N. Moore*, for appellees (case no. A01A2447).