## A04A1505. OSBURN v. GOLDMAN et al.

(603 SE2d 695)

PHIPPS, Judge.

From March 1991 through January 1996, Dr. Gilbert Goldman gave Bobbie Osburn injections of liquid silicone to eradicate lines and wrinkles in her face. On March 30, 2000, Osburn began to sustain facial eruptions and swelling caused by the injections. To recover damages, Osburn brought this medical malpractice action against Goldman and his employer, Atlanta Center for Dermatologic Diseases, P.C., on March 15, 2002.

Defendants answered the complaint and argued, among other things, that this action is barred by the medical malpractice statutes of limitation and repose. Osburn, however, charged Goldman with fraud estopping the defendants from asserting the statute of repose defense. Finding no evidence of fraud by Goldman, the trial court determined that this action is barred by the statute of repose and awarded summary judgment to the defendants. Osburn appeals. We affirm.

1. (a) A statute of limitation differs from a statute of ultimate repose, in that

> [a] statute of limitation is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued. A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable. [Cit.][1]

The Georgia statute of limitation for medical malpractice is codified at OCGA § 9-3-71 (a); it permits an action to be filed within two years after the resulting injury or death. The Georgia statute of repose for medical malpractice is codified at OCGA § 9-3-71 (b); it precludes an action from being brought more than five years from the date of the alleged negligent act or omission.

> [B]y definition, a statute of ultimate repose cannot be "tolled" to permit actions to be brought for injuries which did not occur until after the statutory period had expired. However, the statute of ultimate repose should not be applied to relieve a defendant of liability for injuries which occurred during the period of liability, but which were concealed from the patient by the defendant's own fraud. The statute of

---

[1] *Hill v. Fordham*, 186 Ga. App. 354, 357 (2) (367 SE2d 128) (1988).

ultimate repose should not provide an incentive for a doctor or other medical professional to conceal his or her negligence with the assurance that after five years such fraudulent conduct will insulate him or her from liability. The sun never sets on fraud.[2]

Therefore, if the evidence of defendant's fraud or other conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit is found by the jury to exist, then the defendant is equitably estopped from raising the defense of the statute of repose.[3] But only intentional fraud by the defendant gives rise to the applicability of the doctrine of equitable estoppel.[4]

Osburn brought this suit within two years after her injuries manifested themselves, but more than five years after her last treatment by Goldman. Therefore, this action is barred by the statute of repose absent evidence of intentional fraud by Goldman that deterred Osburn from bringing suit.

In her complaint, Osburn alleged that Goldman had persuaded her to have the silicone injections and had continually represented to her that the injections were safe and would cause her no harm. Osburn further alleged that, when those representations were made, Goldman knew they were false because he knew that silicone injections had been banned by the FDA because of serious problems that do not manifest themselves until years later. For these reasons, Osburn claimed that Goldman had concealed facts showing the existence of her cause of action, so that the doctrine of equitable estoppel thereby barred the defendants from asserting a statute of repose defense.

In his affidavit, Goldman denied Osburn's claim that, at the time he was treating her, the FDA had banned the injection of liquid silicone for cosmetic purposes because of its long-term adverse effects. According to Goldman, although liquid silicone injections had not been approved by the FDA, they were being used "off-label" for cosmetic purposes. Goldman testified that he unequivocally believed the injections were safe and would cause Osburn no harm.

(b) The question presented is whether Goldman's affidavit testimony was contradicted in any material part by affidavits given by Osburn's expert witness, Dr. Alan Boyd, and by Goldman's physician's assistant, Barbara Rosing, so as to create a material issue of fact on the question of fraud. We answer this question in the negative.

---

[2] *Hill v. Fordham*, supra, at 357-358.

[3] *Esener v. Kinsey*, 240 Ga. App. 21, 23 (522 SE2d 522) (1999).

[4] *Miller v. Vitner*, 249 Ga. App. 17, 18 (546 SE2d 917) (2001).

"When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. [Cit.]"[5] But should the defendant show an entitlement to summary judgment by demonstrating the absence of evidence as to one essential element of the plaintiff's case, the plaintiff cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[6] "Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' "[7]

Boyd's testimony showed that although the FDA had not approved the use of liquid silicone injections, neither had it banned such injections due to their adverse long-term effects. According to Boyd, when Osburn began receiving the silicone injections, their side effects were in the formative stages of being researched and published in the medical literature, although several articles had appeared in the literature prior to that time documenting cases of patients like Osburn who had experienced untoward effects from such injections. Boyd, however, acknowledged that, under the standard of care in 1991 and 1992, the injections given to Osburn were not inappropriate, given that most of the literature to that point had extolled the benefits and relative rarity of complications involving this procedure. But Boyd opined that the injections from late 1992 through 1995 were a deviation from the standard of care, because reports of untoward outcomes, such as that experienced by Osburn, had become better known in the dermatological surgical community by then. In Boyd's opinion, Goldman should have been aware of at least some of these reports and reevaluated whether to continue performing this procedure. Rosing merely testified that Goldman and other physicians in his practice informed their patients that although liquid silicone injections had not been approved by the FDA for cosmetic purposes, they considered the procedure safe.

The evidence thus shows without contradiction that, contrary to allegations in Osburn's pleadings, at the time she received the injections the FDA had not banned injections of liquid silicone for

---

[5] *State Farm Fire &c. Co. v. Goodman*, 259 Ga. App. 62, 63 (1) (576 SE2d 49) (2002).

[6] *Simmons v. Futral*, 262 Ga. App. 838 (586 SE2d 732) (2003).

[7] *Dept. of Transp. v. Carr*, 254 Ga. App. 781, 782 (564 SE2d 14) (2002), citing OCGA § 9-11-56 (c).

cosmetic purposes due to their adverse effects. Construing the evidence and all inferences and conclusions most favorably to Osburn, "[t]here is nothing in the record to reflect that [Goldman] knew at any time that the treatment or opinion given by him was in error, nor is there any evidence that [he] fraudulently withheld such information from the patient."[8] Therefore, the defendants were entitled to summary judgment.

2. For the first time on appeal, Osburn also challenges the constitutionality of the medical malpractice statute of repose under the equal protection clauses of the state and federal constitutions. But the Supreme Court of Georgia has upheld the constitutionality of the statute against such a challenge.[9] Moreover, "[a] constitutional issue cannot be considered when asserted for the first time on appeal but must be clearly raised in the trial court and distinctly ruled upon there."[10] If the constitutional challenge had been raised and ruled on in the trial court, and if it presented an unresolved question, jurisdiction of this case would be in our Supreme Court.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED AUGUST 13, 2004 —
RECONSIDERATION DENIED AUGUST 27, 2004 — 

*Greer, Klosik, Daugherty & Swank, Frank J. Klosik, Jr., Robert J. McCune,* for appellant.

*Hall, Booth, Smith & Slover, Jack G. Slover, Jr., Howard W. Reese III,* for appellees.

---

[8] (Citations and punctuation omitted.) *Lasoya v. Sunay*, 193 Ga. App. 814, 816 (1) (389 SE2d 339) (1989); see also *Hutcherson v. Obstetric & Gynecologic Assoc. of Columbus*, 247 Ga. App. 685 (543 SE2d 805) (2000); compare *Esener v. Kinsey*, supra.

[9] See *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657 (437 SE2d 308) (1993).

[10] (Citation and punctuation omitted.) *In the Interest of A. A.*, 253 Ga. App. 858, 862 (3) (560 SE2d 763) (2002).