[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16715
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-00176-WLS

KENNETH E. BULLINGTON,

Plaintiff - Appellee,

versus

M. C. PRECISE,
DMD,
JON F. STRENGTH,
DMD,
DAVID N. STRENGTH,
DMD,
MICHAEL C. PRECISE,
DMD, P.A.,
d.b.a. Dixieland Dental,
DIXIELAND DENTAL,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(August 17, 2017)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Defendants Michael Precise ("M.C. Precise"), Jon Strength, David Strength, and Dixieland Dental ("Dixieland") appeal the district court's denial of their motion to dismiss plaintiff Kenneth Bullington's complaint. Bullington filed a civil action in Georgia state court against the defendants, alleging that they committed medical malpractice by negligently removing teeth from Bullington's right jaw without accounting for radiation treatments to the jaw. The defendants removed the case to federal district court and moved to dismiss the complaint as barred by Georgia's five-year statute of ultimate repose for medical malpractice claims. See O.C.G.A. § 9-3-71(b). The district court denied the defendants' motion, determining that they were equitably estopped from asserting the statute-of-repose defense because they agreed to enter into an agreement with Bullington tolling "any limitations period (i.e. statute of limitations or statute of repose)."

After thorough review, we affirm.

2

## I. FACTUAL BACKGROUND

### A. Bullington's Dental Care and Jaw Injuries

Plaintiff Bullington is a resident of Worth County, Georgia. Defendant Drs. M.C. Precise, Jon Strength, and David Strength are dentists and employees of defendant Dixieland, a regional dentistry practice in Midland City, Alabama.[1]

In 2009, Bullington was diagnosed with metastatic cancer involving the left and right tonsils. Bullington received treatment for the cancer which included radiation treatment to his left and right jaw. Since January 15, 2010, Bullington has remained cancer free.

On July 28, 2010, Bullington sought dental care at Dixieland. On August 11, 2010, defendant Dr. Jon Strength of Dixieland removed two teeth from Bullington's right jaw. Dr. Jon Strength did not consult with Bullington's treating radiation oncologist or prescribe Bullington hyperbaric oxygen before or after the tooth extractions.

Between September 22, 2010, and May 11, 2011, Bullington made five additional visits to Dixieland. During these visits, Bullington was seen by Drs. Jon Strength, David Strength, and M.C. Precise. During these visits, the defendants did not take any x-rays of Bullington's jaw or give Bullington hyperbaric oxygen.

---

[1]Bullington's complaint alleges that Dixieland "is an entity owned and/or operated by M.C. Precise, Jon F. Strength and/or David N. Strength."

On September 25, 2012, Bullington sought dental care with King Family Dental Care, P.C. ("King") in Albany, Georgia. On August 19, 2013, a King dentist extracted seven teeth from Bullington, including several from his right jaw.

On September 10, 2013, Bullington returned to Dixieland and obtained a panoramic x-ray of his right jaw. Dr. David Strength entered a clinical note showing the x-ray as "normal" and did not recommend Bullington for hyperbaric oxygen or additional consultation concerning his right jaw. Bullington alleges that the September 10, 2013 x-ray showed "an area of necrosis," or decay, in the right jaw, near where Dr. Jon Strength had extracted two teeth in August 2010.

In March 2014, Bullington presented to an oral surgeon who examined Bullington's lower right jaw and diagnosed him with osteoradionecrosis (bone death due to exposure to radiation and loss of blood supply due to unmanaged infection) that was compounded by a right jaw fracture. According to the oral surgeon, Bullington's symptoms "were consistent with prior extractions by a general dentist in the right mandible." Following the diagnosis, Bullington underwent several surgeries to remove part of his right jaw.

## B.    Tolling Agreement

At some point thereafter, Bullington and the defendants began to discuss possible legal action, as well as a potential settlement. On August 6, 2015, the defendants and Bullington entered into a tolling agreement.

4

According to a later March 7, 2016 affidavit by defendants' counsel, Bullington's counsel prepared the initial draft of the tolling agreement. This initial draft stated that the parties agreed to toll "any defense based on the statute of limitations," but it did not mention the tolling of any statute of repose.

Prior to the parties' signing of the tolling agreement, Bullington's counsel emailed defendants' counsel, stating: "I realized I needed to slightly revise the references to the limitation periods to make clear the intent that it would cover the repose period or st[a]tute of limitations." Defendants' counsel, an attorney licensed in Alabama, asserts that he "made no representations to [plaintiff Bullington's] counsel as to whether the statute of repose could be tolled under Georgia law." Bullington's counsel submitted a revised draft of the tolling agreement which added language tolling "<u>any period of limitations</u> (i.e. statute of limitations or <u>statute of repose</u>)." The parties then signed the revised tolling agreement. The relevant portion of the revised, and final, agreement read:

> The parties hereto agree that the running of any limitations period (i.e. statute of repose of limitations or statute of repose) shall be tolled and suspended from and including August 6, 2015 to and including September 23, 2015.

The agreement also contained language stating that the defendants "would prefer to avoid having a lawsuit filed against [them] for any and all potential claims related to [the defendants' dental services]."

5

## C.    Procedural History

On September 23, 2015, the last day of the parties' agreed-to tolling period, Bullington filed a complaint for professional negligence against the defendants in the Superior Court of Dougherty County, Georgia.

Through the complaint, Bullington alleged that defendants Drs. David Strength and Jon Strength breached their duty of care by extracting two of Bullington's teeth on August 11, 2010, without consulting Bullington's treating radiation oncologist, appropriately considering Bullington's medical history, discussing the particular risks of the extraction with Bullington, or providing hyperbaric oxygen. As to Dr. David Strength alone, Bullington alleged that, on September 10, 2013, Dr. Strength failed to appropriately read the panoramic x-ray of Bullington's mouth and recommend care based on a visible "wound on the mandible." As to Drs. David Strength, Jon Strength, and M.C. Precise, Bullington alleged that each dentist failed to document any informed consent with Bullington regarding the specific and serious risks related to his tooth extractions. As to defendant Dixieland, the complaint included a vicarious liability claim against Dixieland under a theory of respondeat superior for the negligence of the three named dentist-defendants.

6

**D.     Motion to Dismiss**

On October 28, 2015, the defendants timely removed the action to the United States District Court for the Middle District of Georgia. On November 4, 2015, the defendants moved to dismiss Bullington's complaint for lack of jurisdiction.

In the motion to dismiss, the defendants asserted that Bullington's claims relating to "the alleged negligent acts occurring on August 11, 2010" (i.e. the extraction of two teeth from Bullington's right jaw) were time-barred because Bullington filed the claims on September 23, 2015, outside of the five-year statute of repose (which closed on August 11, 2015). The defendants asserted that the parties' August 6, 2015 tolling agreement did not impact this statute-of-repose defense because, under Georgia law, "the medical malpractice statute of repose may not be tolled for any reason." Simmons v. Sonyika, 614 S.E.2d 27, 30 (Ga. 2005).

On September 21, 2016, the district court denied the defendants' motion to dismiss. The district court noted that "[t]he complaint does not allege any facts which would allow the statute [of repose] to be extended." However, the district court determined that the defendants were "estopped from claiming the statute of repose as a defense" in this case because the August 6, 2015 tolling agreement

7

"'lull[ed Bullington] into a false security' and caused him to delay the filing of the instant action."

Citing Esener v. Kinsey, 522 S.E.2d 522 (Ga. Ct. App. 1999), the district court stated that a defendant could be equitably estopped from asserting a statute-of-repose defense where there is: (1) evidence of a defendant's fraud; or (2) evidence of "other conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit." Id. at 524. The district court noted that it was "unable to find any cases in which a Georgia court has considered what 'other conduct' is sufficient to equitably estop a defendant from raising the statute of repose." However, in this case, the district court determined that the tolling agreement was evidence of such "conduct on which the plaintiff reasonably relied" in failing to bring suit.[2]

### E. Motion for Reconsideration

On October 4, 2016, the defendants filed a motion for reconsideration of the district court's September 21, 2016 order denying the defendants' motion to dismiss. On October 20, 2016, the district court denied the defendants' motion for

---

[2]In its September 21, 2016 order denying the defendants' motion to dismiss, the district court ordered Bullington to amend his complaint and allege additional facts supporting the district court's jurisdiction. On October 5, 2016, Bullington filed an amended complaint adding factual allegations that the defendants, by way of the August 6, 2015 tolling agreement, were equitably estopped from asserting a statute-of-repose defense. Bullington also added allegations that he relied on the defendants' representations in waiting until September 23, 2015, to file his initial complaint.

reconsideration. The district court clarified that the defendants' "wrongful conduct" in this case was their "acting to cause delay and subsequently acting to take advantage of that delay." The district court analogized the facts of this case to a Seventh Circuit case, <u>Bomba v. W.L. Belvidere, Inc.</u>, 579 F.2d 1067 (7th Cir. 1978), which the Georgia Court of Appeals had cited as support for the proposition that equitable estoppel arises from "fraud or <u>other conduct</u> on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit." See <u>Hill v. Fordham</u>, 367 S.E.2d 128, 132 (Ga. Ct. App. 1988) (emphasis added).

On October 21, 2016, the defendants timely appealed.[3]

---

[3]In their October 4, 2016 motion for reconsideration, the defendants also requested certification for appellate review of the district court's September 21, 2016 denial of the defendants' motion to dismiss, pursuant to 28 U.S.C. § 1292(b) and "the 'collateral order' doctrine." On October 20, 2016, the district court denied certification under § 1292(b) because, though the defendants had shown grounds for appellate review under the collateral order doctrine, those grounds lay within § 1291 and were appealable as of right.

We agree with the district court that the September 21, 2016 order is appealable under § 1291 under the collateral order doctrine. See <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 530, 105 S. Ct. 2806, 2817 (1985); <u>Green v. Brantley</u>, 941 F.2d 1146, 1148-49 (11th Cir. 1991). Because, in this case, the district court's September 21, 2016 order squarely addresses a central statute-of-repose issue which is separate from the merits, and because the defendants' right under the statute of repose to otherwise be free from defending the suit would be effectively lost in the absence of an immediate appeal, appellate review under the collateral order doctrine is proper. This situation is similar to the qualified immunity defense under which we accept appellate review under the collateral order doctrine. See <u>Tinney v. Shores</u>, 77 F.3d 378, 380 (11th Cir. 1996) (per curiam) ("[T]his Court has jurisdiction to review interlocutory appeals from orders denying summary judgment based on qualified immunity."); <u>see also</u> <u>Green</u>, 941 F.2d at 1149-50.

## II.  DISCUSSION

### A.    Standard of Review

"We review the denial of appellant's motion to dismiss de novo as to the law, but we apply the clear error standard to any findings of fact." S & Davis Int'l, Inc. v. The Republic of Yemen, 218 F.3d 1292, 1298 (11th Cir. 2000) (citation omitted). Whether the established facts give rise to an equitable estoppel is a question of law, but "the constituent elements of estoppel constitute questions of fact, and the district court's findings on these matters must be upheld unless clearly erroneous." Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1323 (11th Cir. 1989) (per curiam).

### B.    Applicable Law

Under Georgia law, "in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred." O.C.G.A. § 9-3-71(b). This statute of repose "is absolute . . . destroy[ing] the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists." Simmons, 614 S.E.2d at 29 (quoting Wright v. Robinson, 426 S.E.2d 870, 871-72 (Ga. 1993)). "Unlike statutes of limitation, statutes of repose may not be 'tolled' for any reason." Id. at 30.

However, if evidence "of defendant's fraud or other conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit" is found to exist,

10

"then the defendant, under the doctrine of equitable estoppel, is estopped from raising the defense of the statute of repose." Esener, 522 S.E.2d at 524. "The statute of repose is not tolled by fraud, but fraud, instead, gives rise to the doctrine of equitable estoppel, which prevents the defendant from asserting the defense of the statute of repose." Id.

**C.    Discussion**

On appeal, the defendants assert that Georgia courts since Esener have "ma[d]e clear that equitable estoppel is only warranted when a defendant's wrongful conduct causes a plaintiff to miss filing within the repose period" and that estoppel contrarily does not apply "absent evidence that the defendant concealed information necessary for the plaintiff to file within the repose period." See Osburn v. Goldman, 603 S.E.2d 695, 697 (Ga. Ct. App. 2004); Hutcherson v. Obstetric & Gynecologic Assocs. of Columbus, P.C., 543 S.E.2d 805, 807 (Ga. Ct. App. 2000). The defendants argue that, because they did not add the statute-of-repose language in the tolling agreement or make any representations about the enforceability of such language under Georgia law, they have not committed any wrongful conduct and should not have been estopped from asserting their statute-of-repose defense.

However, the Georgia authorities on which the defendants rely are not inconsistent with the state-law guidance that equitable estoppel applies to fraud <u>or</u>

11

"other conduct on which the plaintiff reasonably relied" in forbearing suit. See Hill, 367 S.E.2d at 132. In both Osburn v. Goldman and Hutcherson v. Obstetric & Gynecologic Assocs. of Columbus, a plaintiff-patient failed to timely bring a medical malpractice claim against a defendant-doctor due to a doctor's good-faith mistake, the error of which was not apparent at the time of treatment. See Osburn, 603 S.E.2d at 697-98 (doctor's use of ultimately harmful silicone injections was not declared unsafe by FDA at time of treatment); Hutcherson, 543 S.E.2d at 806 (doctor's heart-murmur diagnosis only later refuted by subsequent third-party autopsy's finding of "a very rare disorder that affects pregnant wom[e]n").[4] The Osburn court did cite the "other conduct" language of Esener in describing the doctrine of equitable estoppel, but it did not analyze the defendant's conduct under this prong because the defendant-doctor's alleged fraudulent medical concealment was the sole factual issue before the court. Osburn, 603 S.E.2d at 304.

In this case, the defendants acted with an express intent to toll "any limitations period" notwithstanding Georgia's well-settled law that the medical malpractice statute of repose "may not be 'tolled' for any reason." See Simmons, 614 S.E.2d at 30. Thus here, and unlike in Osburn and Hutcherson, it was apparent at the time of the defendants' conduct that, but for the defendants' promise,

---

[4]The defendants also cite Canas v. Al-Jabi, 639 S.E.2d 494, 508 (Ga. Ct. App. 2006) for the principle that equitable estoppel requires intentional wrongful conduct on the part of the defendant. However, the Canas decision was later reversed and vacated by the Georgia Supreme Court. See Kaminer v. Canas, 653 S.E.2d 691 (Ga. 2007).

Bullington's claims relating to the August 11, 2010 tooth extraction would be otherwise barred by the statute of repose.

Nevertheless, the defendants made an agreement with Bullington promising not to raise this statute-of-repose defense in exchange for Bullington's agreement to postpone filing suit. It was clear, as the district court determined, that the defendants "intended to enter in [the tolling agreement] and did not somehow negligently enter" it. It was also clear that the agreement required Bullington "to forego [sic] the filing of any lawsuit against [defendants] . . . prior to the termination date [of the agreement]." Given the parties' conduct and agreed-to language, we cannot say that the district court clearly erred in determining that the defendants "lull[ed Bullington] into a false security" by agreeing to enter into this tolling arrangement.

The defendants argue that they did not draft the additional language tolling the statute of repose and made no representations as to the parties' ability to do so under Georgia law. But the district court considered this argument and noted that "[i]t makes no difference" because "both parties purport[ed] to toll the repose period." The doctrine of equitable estoppel follows from "the maxim that no man may take advantage of his own wrong." Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 232, 79 S. Ct. 760, 762 (1959). Here, even if Bullington's counsel drafted the relevant language, Bullington relied on the defendants' express promise

13

to suspend the assertion of any statute-of-repose defense until after September 23, 2015. Bullington in fact delayed the bringing of his lawsuit until September 23, 2015, after the five-year statute of repose otherwise expired on August 11, 2015. In spite of this, the defendants now seek to gain the benefit of a repose rule that they promised not to assert against Bullington. Under these facts, we cannot say that the district court erred in applying the doctrine of equitable estoppel.

## III.  CONCLUSION

For all of these reasons, we affirm the district court's denial of the defendants' motion to dismiss the complaint.

**AFFIRMED.**