NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: July 2, 2024

S24G0008. GOLDEN v. FLOYD HEALTHCARE MANAGEMENT, INC. d/b/a FLOYD MEDICAL CENTER.

McMILLIAN, Justice.

On October 21, 2021, Jami Lynn Golden filed a renewal action against Floyd Healthcare Management, Inc. d/b/a Floyd Medical Center ("Floyd Medical") in Floyd County Superior Court, asserting claims of medical malpractice and hospital negligence, among other claims. Floyd Medical moved to dismiss, arguing in part that OCGA § 9-3-71 (b), a five-year medical malpractice statute of repose, expired in July 2021 and thus time-barred Golden's suit. The trial court denied that motion, concluding that the claims were not time-barred by OCGA § 9-3-71 (b) because the repose statute was tolled by former Chief Justice Harold D. Melton's "Order Declaring Statewide Judicial Emergency" dated March 14, 2020 ("March 14 Order"). The Court of Appeals reversed, holding that OCGA § 9-3-71

(b) was not tolled by the March 14 Order but, instead, that OCGA §
9-3-71 (b) expired before Golden filed her renewal complaint. See
*Golden v. Floyd Healthcare Mgmt., Inc.*, 368 Ga. App. 409, 417-25
(3) (890 SE2d 288) (2023). For the reasons below, we conclude that
Golden's claims were not time-barred because the March 14 Order
tolled OCGA § 9-3-71 (b), and that under these circumstances there
is no impediment in the federal or Georgia Constitutions for the
statute of repose to be tolled, so we reverse.

1. An appellate court "review[s] de novo a trial court's ruling on
a motion to dismiss, accepting as true all well-pled material
allegations in the complaint and resolving any doubts in favor of the
plaintiff." *Maynard v. Snapchat, Inc.*, 313 Ga. 533, 535 (2) (870 SE2d
739) (2022) (citation and punctuation omitted). Viewed in this light,
the record shows that:

> Golden visited Floyd Emergency Care Center at
> approximately 8:30 p.m. on July 1, 2016, complaining of
> abdominal pain, fever, chills, and nausea. Among other
> readings taken during Golden's triage assessment,
> medical staff noted that she had a low-grade fever, a heart
> rate of 118 beats per minute, a white blood cell count of
> 4.9, and bands of 15 percent. As a result of these readings,

2

Golden alleged that she satisfied two general internal criteria of "systemic inflammatory response syndrome" (or, SIRS) to be monitored for sepsis — an elevated heart rate and bands in excess of 10 percent.

A nurse practitioner [Charles William Stein] initially suggested that Golden was suffering from an ovarian cyst or endometriosis and administered saline fluid and medications to control her pain. At approximately 2:00 a.m. on July 2, "a computer generated Sepsis Alert concerning . . . Golden activated based on an algorithm that interpreted her vital signs and lab results as being at risk for sepsis[.]" Golden alleged that [Sharon] Gaylor, the charge nurse on duty at the time of the sepsis alert, failed to forward the alert to the attending physician on duty [Dr. Garrett H. Barnes] and the primary nurse assigned to Golden, in violation of Floyd Medical's written sepsis alert policy. Golden was prescribed additional pain medication and discharged approximately one hour after the sepsis alert, with instructions to follow up in two to three days.

Golden's symptoms persisted and her condition worsened throughout the day, including the onset of additional symptoms of a sore throat, headache, dizziness, and shortness of breath. At approximately 4:00 p.m. on July 2, an ambulance transported Golden, by then in septic shock, to Redmond Regional Emergency Care Center for treatment. Medical staff initiated Redmond Regional's sepsis protocol, administered extensive treatment of Golden, and admitted Golden to the Redmond Regional Medical Center Intensive Care Unit. Golden remained in Redmond Regional's ICU for 11 days before transferring to University of Alabama-Birmingham Medical Center for further treatment. As a result of the septic shock, Golden suffered necrosis that required the amputation of parts of her fingers and toes.

3

*Golden*, 368 Ga. App. at 410-12 (footnote omitted).

In June 2018, Golden filed suit in federal court against Floyd Medical, the attending physician (Dr. Barnes), the nurse practitioner (Stein), and a physician's assistant (Danny Day Rogers), among others. Her complaint asserted several claims, including claims for medical malpractice and hospital negligence.

During the pendency of her case, the COVID-19 pandemic began. In response to the pandemic, former Chief Justice Melton issued the March 14 Order, citing as the basis of his authority, OCGA § 38-3-62. As pertinent here, the March 14 Order provided:

> Pursuant to OCGA § 38-3-62, during the period of this Order, the undersigned hereby suspends, tolls, extends, and otherwise grants relief from any deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases or administrative matters, including, but not limited to any: (1) statute of limitation . . . and (11) such other legal proceedings as determined to be necessary by the authorized judicial official.[1]

---

[1] *Order Declaring Statewide Judicial Emergency* (Mar. 14, 2020), https://www.gasupreme.us/wp-content/uploads/2020/03/CJ-Melton-amended-Statewide-Jud-Emergency-order.pdf. The March 14 Order did not explicitly set out that statutes of repose were tolled pursuant to the order. See id.

4

This Court subsequently issued several documents clarifying the effect of the March 14 Order. On March 27, 2020, this Court issued a document called "Guidance on Tolling Filing Deadlines Under the Chief Justice's Order Declaring Statewide Judicial Emergency" ("March 27 Guidance") applicable to "all proceedings and filing deadlines," clarifying that the March 14 Order tolled all "non-constitutional filing deadlines" if the "filing deadline date was after March 14, 2020[.]"[2] On April 6, 2020, this Court issued another guiding document clarifying that "[i]f the period of limitation for a particular cause of action commenced prior to March 14, 2020 . . . the running of the period of limitation was suspended on March 14" and would "resume when the tolling provision of the March 14 declaration . . . expired or [was] otherwise terminated."[3] Finally, on July 10, 2020, then-Chief Justice Melton issued an order that

---

[2] *Guidance on Tolling Filing Deadlines Under the Chief Justice's Order Declaring Statewide Judicial Emergency* (Mar. 27, 2020), https://www.gasupreme.us/wp-content/uploads/2020/05/Guidance-for-tolling-filing-deadlines-final-3.30.20-002.pdf.

[3] *Guidance on Tolling Statutes of Limitation Under the Chief Justice's Order Declaring Statewide Judicial Emergency* (Apr. 6, 2020), https://www.gasupreme.us/wp-content/uploads/2020/04/Guidance-for-Tolling-Statutes-of-Limitation-04_06_20.pdf.

reinstated, starting from July 14, 2020, all deadlines suspended, tolled, or extended by the March 14 Order, subject to exceptions not relevant here.[4]

In June 2021, the federal district court granted a motion by the defendants to strike Golden's expert Rule 26 disclosures, and she then filed a motion to voluntarily dismiss her complaint without prejudice, which the district court granted.

On October 21, 2021, Golden filed a renewal action in Floyd County Superior Court against Floyd Medical, asserting claims of medical malpractice and hospital negligence in Count I of her renewal complaint.[5] Floyd Medical moved to dismiss, arguing in part that OCGA § 9-3-71 (b), the five-year medical malpractice statute of

---

[4] *Fourth Order Extending Declaration of Statewide Judicial Emergency* (Jul. 10, 2020), https://www.gasupreme.us/wp-content/uploads/2020/07/4th-SJEO-FINAL.pdf. We refer to the March 14 Order, the guiding documents issued on March 27 and April 6, and the July 10 reinstatement order, as, collectively, "the COVID emergency orders."

[5] Count II of Golden's renewal complaint asserted a claim of "ordinary negligence." The trial court dismissed Count II on the grounds that the ordinary negligence claim did not relate back to the filing of the initial complaint and was barred by the applicable two-year statute of limitations, and the Court of Appeals affirmed the dismissal. See *Golden*, 368 Ga. App. at 415-16 (1) (b). We did not grant Golden's petition for certiorari on this issue.

repose, expired on July 1-2, 2021, five years from Golden's allegedly negligent treatment, and so her October 21, 2021 renewal complaint was time-barred. The trial court denied Floyd Medical's motion to dismiss with respect to Golden's Count I medical malpractice and hospital negligence claims, determining that Chief Justice Melton's March 14 Order tolled OCGA § 9-3-71 (b) for 122 days such that the repose period for those claims expired on October 31, 2021.

The Court of Appeals reversed, holding that Golden's claims were barred by the five-year medical malpractice statute of repose in OCGA § 9-3-71 (b). See *Golden*, 368 Ga. App. at 417-25 (3). The Court of Appeals reasoned that the March 14 Order did not toll OCGA § 9-3-71 (b), because Georgia courts, even in cases decided after the enactment of the Judicial Emergency Act in 2004, have held that statutes of repose are "absolute" and "cannot be tolled," see e.g., *Simmons v. Sonyika*, 279 Ga. 378, 379-80 (614 SE2d 27) (2005) (citation and punctuation omitted), and because the March 14 Order and subsequent guiding documents did not specifically state that the March 14 Order tolled statutes of repose. See *Golden*, 368 Ga. App.

7

at 422-25 (3).

This Court, in turn, granted review to consider three questions:

(1)     Does OCGA § 38-3-62 (a) empower "[a]n authorized judicial official" to "suspend, toll, extend, or otherwise grant relief from" the application of a statute of repose?

(2)     Did Chief Justice Melton's "Order Declaring Statewide Judicial Emergency" dated March 14, 2020, and subsequent orders suspend, toll, extend, or otherwise grant relief from the application of a statute of repose?

(3)     Assuming that the answers to questions (1) and (2) are "yes," can OCGA § 38-3-62 (a) and Chief Justice Melton's COVID emergency orders be applied to toll the statute of repose in OCGA § 9-3-71 (b) consistent with the federal and Georgia Constitutions? See *Southern States Chemical, Inc. v. Tampa Tank & Welding, Inc.*, 316 Ga. 701 (888 SE2d 553) (2023).

3. Turning now to the first question, we answer it in the affirmative: OCGA § 38-3-62 (a) empowers an "authorized judicial official"—here, Chief Justice Melton[6]—to "suspend, toll, extend, or otherwise grant relief from" the application of a statute of repose.

---

[6] OCGA § 38-3-60 (1) (A) explicitly defines the term "[a]uthorized judicial official," as used in OCGA § 38-3-62 (a), as including "[t]he Chief Justice of the Georgia Supreme Court[.]"

8

OCGA § 38-3-62—which the Georgia General Assembly enacted in 2004 as part of the "Judicial Emergency Act of 2004" (OCGA §§ 38-3-60 et seq.), see Ga. L. 2004, pp. 420-21, §§ 1-3—provides in subsection (a) that:

> An authorized judicial official in an order declaring a judicial emergency, or in an order modifying or extending a judicial emergency order, is authorized to suspend, toll, extend, or otherwise grant relief from deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases or administrative matters, including, but not limited to . . . (1) A statute of limitation . . . and (11) Such other legal proceedings as determined to be necessary by the authorized judicial official.

OCGA § 38-3-62 (a).[7]

The question before us—whether OCGA § 38-3-62 (a) empowers an authorized judicial official to toll, suspend, extend, or otherwise grant relief from a statute of repose—turns on whether a repose statute falls within the meaning of "deadlines or other time schedules or filing requirements imposed by otherwise applicable

---

[7] OCGA § 38-3-62 (a) does not explicitly set out that statutes of repose may be tolled by a judicial emergency order.

statutes . . . including, but not limited to" the list of items that OCGA §§ 38-3-62 (a) (1)-(11) enumerates. See OCGA § 38-3-62 (a).

When we consider the meaning of a statute, we "presume that the General Assembly meant what it said and said what it meant." *Bell v. Hargrove*, 313 Ga. 30, 32 (2) (867 SE2d 101) (2021) (citation and punctuation omitted). Thus, "we must afford the statutory text its plain and ordinary meaning, . . . view the statutory text in the context in which it appears, and . . . read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. . . . [I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." *Mayor v. Harris*, 302 Ga. 853, 854-55 (809 SE2d 806) (2018) (citation and punctuation omitted).

Here, it is clear and unambiguous that statutes of repose fall within the meaning of "deadlines" under OCGA § 38-3-62 (a). To start, a statute of repose is within the plain and ordinary meaning of a "deadline" imposed by a statute. A "deadline" ordinarily refers

to a "time limit" such as one for the "completion of an assignment," see The American Heritage Dictionary of the English Language 466 (4th ed. 2000), and a statute of repose provides just that—a time limit by which a litigant can file a non-barred suit, see Black's Law Dictionary 1423 (7th ed. 1999) (defining a "statute of repose" as "a statute that bars a suit *a fixed number of years* after the defendant acts in some way . . . even if this period ends before the plaintiff has suffered any injury" (emphasis added)). Also, our case law has repeatedly referred to a statute of repose as a "deadline." See e.g., *Rosenberg v. Falling Water, Inc.*, 289 Ga. 57, 60 (709 SE2d 227) (2011) ("[T]he defendant would not be allowed to cause the plaintiff to miss the *deadline* imposed by the statute of repose and then use that same statute to defeat the plaintiff's otherwise viable action." (emphasis added)); *Robinson v. Boyd*, 288 Ga. 53, 57 (2) (701 SE2d 165) (2010) ("Where the General Assembly wishes to put a firm *deadline* on filing lawsuits, it knows how to enact a statute of repose instead of a statute of limitation." (emphasis added)).

Floyd Medical argues that OCGA § 38-3-62 (a) does not

11

authorize the tolling of statutes of repose because OCGA § 38-3-62 (a) does not specifically mention such statutes. But Floyd Medical offers no case, and we know of none, holding that a law must mention a statute of repose to toll it or to authorize its tolling. As explained above, OCGA § 38-3-62 (a) provides that "deadlines" can be tolled, and a statute of repose is plainly a "deadline." And, while OCGA § 38-3-62 (a) does not specifically mention a repose statute as a deadline that can be tolled, OCGA § 38-3-62 (a) makes clear that the list of "deadlines" it authorizes to be tolled is non-exhaustive, by introducing that list with the language "including, *but not limited to*" (emphasis added). See *Raffensperger v. Jackson*, 316 Ga. 383, 386 (1) n.6 (888 SE2d 483) (2023) ("By specifying that the named services 'shall include, but not be limited to,' the list is not exhaustive."); *Rockdale County. v. U.S. Enterprises, Inc.*, 312 Ga. 752, 765 (3) (865 SE2d 135) (2021) (pointing to the phrase "including but not limited to" in a statute as "a means of introducing non-exhaustive examples" (punctuation omitted)). Thus, Floyd Medical's argument fails.

At times, Floyd Medical also appears to argue that a statute of

12

repose cannot be tolled under any circumstances, relying on *Simmons*, 279 Ga. at 380, where we stated that "by definition, a statute of ultimate repose cannot be 'tolled'" (quoting *Osburn v. Goldman*, 269 Ga. App. 303, 303 (1) (a) (603 SE2d 695) (2004)). See also *Simmons*, 279 Ga. at 380 ("statutes of repose may not be 'tolled' for any reason" (citation and punctuation omitted)). But as Floyd Medical concedes, the legislature has tolled such statutes in the past. See e.g., OCGA § 9-3-73 (c) (2) (A) (tolling the repose period set forth in OCGA § 9-3-71 (b) for children under the age of five until their tenth birthday).

In any event, *Simmons* does not assist Floyd Medical's argument. In *Simmons*, the issue was whether OCGA § 9-3-92, which provides that the "time between the death of a person and the commencement of representation upon his estate . . . shall not be counted against his estate in calculating any limitation applicable to the bringing of an action," tolled a later-enacted statute of repose, OCGA § 9-3-71 (b). In concluding that it did not, *Simmons* reasoned that, as a matter of statutory construction, OCGA § 9-3-92 referred

13

to statutes of limitation and could not have contemplated a statute of repose that was enacted over 100 years later. See *Simmons*, 279 Ga. at 379 ("Because we presume that the legislature enacts all statutes with knowledge of the existing laws, the provisions of the more recently adopted medical malpractice statute of repose carry greater weight than those of the preexisting unrepresented estate statute."). For additional support, *Simmons* then stated, quoting only part of a sentence from a Court of Appeals case, that "[b]y definition, a statute of ultimate repose cannot be 'tolled[.]'" Id. at 380 (quoting *Osburn*, 269 Ga. App. at 303 (1) (a), but omitting a caveat that *Osburn* contained: "'[B]y definition, a statute of ultimate repose cannot be "tolled" *to permit actions to be brought for injuries which did not occur until after the statutory period had expired*.'" (emphasis added)).

Here, by contrast, OCGA § 38-3-62 (a) was enacted after the five-year medical malpractice statute of repose and in contemplation that filing deadlines may need to be tolled or suspended because of a judicial emergency. Applying *Simmons*'s reasoning, we determine

14

that by referring to filing "deadlines," the later-enacted tolling provision (OCGA § 38-3-62 (a)) contemplates and authorizes the tolling of statutes of repose.

Moreover, we decline to read *Simmons* as holding that the legislature can never toll or authorize the tolling of a statute of repose given that the unrepresented estate statute in *Simmons* did not contemplate the tolling of a later-enacted repose statute, that *Simmons* omitted a caveat from *Osburn* when quoting it, and that the legislature has provided for circumstances when a repose statute may be tolled. See *Simmons*, 279 Ga. at 379-80; OCGA § 9-3-73 (c) (2) (A). And to the extent that *Simmons*—or any other case from a Georgia court[8]—can be read to establish an absolute rule that a statute of repose can never be tolled under any circumstances, we disapprove of such a holding.

For these reasons, we answer our first question on certiorari in

---

[8] See e.g., *Rosenberg v. Falling Water, Inc.*, 302 Ga. App. 78, 80 (1) (a) (690 SE2d 183) (2009) ("statutes of repose may not be 'tolled' for any reason" (citation and punctuation omitted)); *Balotin v. Simpson*, 286 Ga. App. 772, 773 (650 SE2d 253) (2007) ("the statute of repose, unlike a statute of limitation, may not be tolled for any reason").

15

the affirmative: OCGA § 38-3-62 (a) empowers "[a]n authorized judicial official" to "suspend, toll, extend, or otherwise grant relief from" the application of a statute of repose.

4. Turning to the second certiorari question, we also answer it in the affirmative. The COVID emergency orders suspended, tolled, extended, and otherwise granted relief from the application of a statute of repose. Mirroring the language of OCGA § 38-3-62 (a), the March 14 Order stated that "the undersigned hereby suspends, tolls, extends, and otherwise grants relief from any deadlines . . . imposed by otherwise applicable statutes . . . including, but not limited to any: (1) statute of limitation . . . and (11) such other legal proceedings as determined to be necessary by the authorized judicial official." (emphasis added). The March 27 Guidance explicitly clarified that the March 14 Order applied to "all proceedings and filing deadlines." As explained above, a statute of repose is plainly a "deadline" by which a litigant can file a non-barred suit. And, just like above, the list of "deadlines" contemplated by the March 14 Order is non-exhaustive, given that the order uses the language

16

"including, but not limited to[.]" Thus, a statute of repose falls within the meaning of "deadlines" or "filing deadlines" tolled, suspended, extended, or otherwise granted relief from by the March 14 Order.

5. Turning to the last question, we consider whether OCGA § 38-3-62 (a) and the COVID emergency orders can be applied to toll OCGA § 9-3-71 (b), consistent with the federal and Georgia Constitutions, in light of *Tampa Tank*, 316 Ga. 701.

In *Tampa Tank*, a manufacturer sued a contractor for breach of an express warranty after discovering problems with a tank that had been installed on its premises. See id. at 701, 703. At the time that the lawsuit was filed, which was ten years after installation of the tank, the applicable eight-year statute of repose under OCGA § 9-3-51 (a) had run. See id. at 713, 715-16 (2). Subsequently, the General Assembly amended that statute of repose so as to exclude the repose period from applying to actions for breach of express contractual warranties. See id. at 705; Ga. L. 2020, p. 37, § 1; OCGA § 9-3-51 (c). When the manufacturer tried to rely on the amendment to bring its breach-of-express-warranty claim, we held that the pre-

17

amendment eight-year repose period still applied to bar the claim, reasoning that the contractor had, under the Due Process Clause of the federal and Georgia Constitutions,[9] a "vested right to be free from liability for [the manufacturer's] contract claims as set out in the pre-2020 version of [statute of repose]." See id. at 706 (1), 712 (1) (b).

Floyd Medical argues that applying OCGA § 38-3-62 (a) and the March 14 Order to toll OCGA § 9-3-71 (b) would violate its due process rights by depriving Floyd Medical of its vested, substantive rights in the five-year repose statute because Floyd Medical should have been able to rely on the repose statute as of the date of Golden's allegedly negligent treatment in July 2016. In contrast, Golden argues that any vested rights that Floyd Medical had, vested only when the repose period on her medical malpractice claims (without tolling) would have expired—that is, in July 2021. Thus, Golden

---

[9] The Fourteenth Amendment to the United States Constitution provides that no State may "deprive any person of life, liberty, or property, without due process of law." Paragraph I of Article I, Section I of the Georgia Constitution of 1983 provides: "No person shall be deprived of life, liberty, or property except by due process of law."

contends the March 14 Order tolled OCGA § 9-3-71 (b) before Floyd Medical's rights under the repose statute vested, and so did not deprive Floyd Medical of vested rights.

We agree with Golden that Floyd Medical's rights would have vested only when OCGA § 9-3-71 (b) would have expired on Golden's medical malpractice claims and did not vest when Golden's allegedly negligent treatment occurred. In *Tampa Tank*, we explained that a critical part of what makes a defendant's rights under a statute of repose, *vested* rights, is that a statute of repose "*extinguishes* a plaintiff's right to bring a cause of action." See 316 Ga. at 711 (1) (b) (emphasis added). Indeed, only when a repose statute extinguishes a plaintiff's rights to bring a claim, does a defendant, in turn, have the "right to be free from liability" for such a claim. See id. at 712 (1) (b) ("Based on the nature of a statute of repose, we conclude that a statute of repose creates a substantive right in being free from liability for a claim *after a fixed period of time* and join the majority of jurisdictions that have reached that conclusion." (emphasis added)); *Phagan v. State*, 287 Ga. 856, 860 (700 SE2d 589) (2010)

("'The statute of repose destroys the previously existing rights so that, on the *expiration* of the statutory period, the cause of action no longer exists.'" (emphasis added; quoting *Wright*, 262 Ga. at 845 (1)). Because the March 14 Order tolled OCGA § 9-3-71 (b) before the latter would have barred Golden's claims in July 2021, the March 14 Order did not deprive Floyd Medical of vested rights in violation of due process. Thus, we conclude that Chief Justice Melton's COVID emergency orders can be applied to toll OCGA § 9-3-71 (b) consistent with the federal and Georgia Constitutions. See *Tampa Tank*, 316 Ga. at 712 (1) (b).

*Judgment reversed. All the Justices concur, except Peterson, P.J., and Pinson, J., disqualified.*